IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 10, 2008

Charles R. Fulbruge III
Clerk

No. 07-20051

In Re Enron Corporation
Securities, Derivative & ERISA Litigation
MDL-1446

_____

MARK NEWBY, ET AL.,

      Plaintiffs,

  v.

ENRON CORPORATION, ET AL.

      Defendants

_____

PEGGY ODAM, Individually and as Trustee for the Kurtz Family Trust

      Plaintiff - Appellant

  v.

ARTHUR ANDERSEN LLP; THOMAS H BAUER; JOSEPH F BERADINO;
DEBRA A CASH; DAVID B DUNCAN; JAMES A FRIEDLIEB; D STEPHEN
GODDARD, JR; GARY B GOOLSBY; MICHAEL M LOWTHER; MICHAEL C
ODOM; ROGER WILLARD; RICHARD B BUY; RICHARD CAUSEY;
ANDREW S FASTOW; BEN GLISAN; KEVIN HANNON; KEN L
HARRISON; JOSEPH M HIRKO; KEVIN HOWARD; MARK E KOENIG;
MICHAEL J KOPPER; ESTATE OF KENNETH L LAY;  JEFFREY
MCMAHON; KRISTINA MOURDAUNT; LOU PAI; PAULO V FERRAZ;
PEREIRA; KENNETH D RICE; JEFFREY K SKILLING; JOHN WAKEHAM;
F SCOTT YEAGER; DANIEL BOYLE; JP MORGAN CHASE & CO; JP
MORGAN SECURITIES INC; J P MORGAN CHASE BANK; CREDIT

SUISSE FIRST BOSTON INC; CREDIT SUISSE FIRST BOSTON USA INC; CREDIT SUISSE FIRST BOSTON LLC; CAMPSIE LTD; CHASE SECURITIES INC; CITIBANK NA; CITICORP; CITICORP GLOBAL MARKETS LTD; CITICORP NORTH AMERICA INC; CITICORP GLOBAL MARKETS, INC; CITIGROUP INC; NATIONAL WESTMINISTER BANK PLC; RBC DOMINION SECURITIES CORP; RBC DOMINION SECURITIES INC; RBC DOMINION SECURITIES LTD; RBC HOLDINGS USA, INC; ROYAL BANK DS HOLDING INC; ROYAL BANK HOLDING INC; ROYAL BANK OF CANADA; THE ROYAL BANK OF SCOTLAND GROUP PLC; GREENWICH NATWEST LTD; GREENWICH NATWEST STRUCTURED FINANCE INC; CITICORP NORTH PERSHING LLC; CANADIAN IMPERIAL BANK OF COMMERCE; CIBC INC; CIBC WORLD MARKETS CORP; MERRILL LYNCH PIERCE FENNER & SMITH INC; BANK OF AMERICA CORP; BANK OF AMERICA, NA; BANC OF AMERICA SECURITIES LLC; BARCLAYS PLC; BARCLAYS BANK PLC; LEHMAN BROTHERS HOLDINGS INC; LEHMAN BROTHERS INC; DANIEL H BAYLY; JAMES A BROWN; ROBERT S FURST; WILLIAM FUHS; SCHUYLER TILNEY

       Defendants - Appellees

_____

DAVID JOSE; JAMES BRISTER; PETER MAXFIELD; GEORGE ATALLAH

       Plaintiffs - Appellants

  v.

ARTHUR ANDERSEN LLP; D STEPHEN GODDARD, JR; DAVID B DUNCAN; DEBRA A CASH; ROGER WILLARD; THOMAS H BAUER; ANDREW S FASTOW; KENNETH L LAY; JEFFREY K SKILLING; RICHARD B BUY; RICHARD CAUSEY; KEN L HARRISON; MICHAEL J KOPPER;  LOU PAI; PAULO V FERRAZ PEREIRA; JOHN WAKEHAM; BEN GLISAN; KRISTINA MOURDAUNT; MICHAEL C ODOM; GARY B GOOLSBY; MICHAEL M LOWTHER; THE FINANCIAL INSTITUTIONS

       Defendants - Appellees

_____

RICHARD CHOUCROUN; MICHAEL KALIL; P J ELLISON KALIL; CARL BRIDGES; ROGER W POWELL; ROGER W POWELL IRA ROLLOVER, under the Trust of Charles Schwab Inc; POWELL ENCHANTED OAKS LTD

      Plaintiffs - Appellants

  v.

ARTHUR ANDERSEN LLP; D STEPHEN GODDARD, JR; DAVID B DUNCAN; DEBRA A CASH; ROGER WILLARD; THOMAS H BAUER; ANDREW S FASTOW; KENNETH L LAY; JEFFREY J SKILLING; THE FINANCIAL INSTITUTIONS

      Defendants - Appellees

_____

MARY BAIN PEARSON; JOHN MASON

      Plaintiffs - Appellants

  v.

ANDREW S FASTOW; JEFFREY J SKILLING; KENNETH L LAY; RICHARD B BUY; RICHARD CAUSEY; RONNIE C CHAN; KEN L HARRISON; MICHAEL J KOPPER;  PAUL V FERRAZ PEREIRA; JOHN WAKEHAM; BEN GLISAN; KRISTINA MOURDAUNT; D STEPHEN GODDARD, JR; THE FINANCIAL INSTITUTIONS

      Defendants - Appellees

_____

FRED A ROSEN; MARIAN ROSEN; LARRY D BARNETT; ROBERT CHAZEN; CLIFFORD D GOOKIN, Trustee for the Clifford D. Gookin Revocable Living Trust; CARL HERRIN; TODD L JOHNSON, Administrator for RJS & Affiliated Companies Pension Plan; ROBIN SAEX; JOHN SIEMER, Trustee FBO The Siemer Family Trust; ELIZABETH SIEMER, Trustee FBO The Siemer Family Trust; JOHN E WILLIAMS; LEE ANN TOBIN, Personal Representative of the Estate of Anthony Tobin

      Plaintiffs - Appellants

v.

ANDREW S FASTOW; KENNETH L LAY; JEFFREY J SKILLING;
RICHARD B BUY; RICHARD CAUSEY; KEN L HARRISON; MICHAEL J
KOPPER;  LOU PAI; PAULO V FERRAZ PEREIRA; JOHN WAKEHAM;
BEN GLISAN; KRISTINA MORDAUNT; D STEPHEN GODDARD, JR;
DAVID B DUNCAN; DEBRA A CASH;
ROGER WILLARD; THOMAS H BAUER; ARTHUR ANDERSEN LLP;
THE FINANCIAL INSTITUTIONS

       Defendants - Appellees

_____

HAROLD AHLICH; FRANCES AHLICH; JOHN BANKS; IDA BANKS;
NANCY BELL; BILL BRAGDON; RHONDA BRAGDON; BRUCE
CAMPBELL; JANET CAMPELL; VINCENT CARRELLA; MARIANNE
CARRELLA; LOUIS CARUCCI; PATRICK CUNNINGHAM; JAMES
DAVIDSON; KAREN DAVIDSON; JOHN DAVIS; PETER DORFLINGER;
RONALD GISH; JOHANNE GRAHAM; JOHN GUTMAN; DAVID HUCKIN;
EDWARD JAPHE; MICHAEL KREHEL; JOHN NEIGHBORS; JEAN
NEIGHBORS; WILLIAM POWELL; SAMUEL REINER; LILLIAN REINER;
HENRITTA ROWE; RALPH SHAPIRO; JEAN SHAPIRO; CONSTANCE
THEODORE; GEORGE VENTERS; NICKYE VENTERS; PETER VERUKI;
CHRISTOPHER ROWE; CHRIS BABSON, Co-Executor of the Estate of
Irving Babson; STACEY BABSON, Co-Executor of the Estate of Irving
Babson; JENNIE LUTZ, Personal Representative of the Estate of Paul Lutz

       Plaintiffs - Appellants

v.

ARTHUR ANDERSEN LLP; D STEPHEN GODDARD, JR; DAVID B
DUNCAN; DEBRA A CASH; ROGER WILLARD; THOMAS H BAUER;
ANDREW S FASTOW; KENNETH L LAY; JEFFREY J SKILLING;
RICHARD B BUY; RICHARD CAUSEY; KEN L HARRISON; MICHAEL J
KOPPER; LOU PAI; PAULO V FERRAZ PEREIRA; JOHN WAKEHAM;
BEN GLISAN; KRISTINA MOURDAUNT; THE FINANCIAL
INSTITUTIONS

       Defendants - Appellees

_____

RUBEN DELGADO; IRENE DELGADO; APOLONIO BACA; ROBERT H BAKER, On behalf of the Brookdale Baker Limited Family Partnership; DAVID F BITONTI; EDWIN C BROUN, III; CAROLINE CALLERY; BONNIE COOKSEY; LOUIS J DALEO, On behalf of Loumar Limited a Partnership; KEN DAVIS; JEFFREY W ELLIOT; DONNA L GAGLIARDI; LOUIS GORDON; JOEL GROSSMAN; JAIME GROSSMAN; DOUGLAS C HAUSE; RIETTA HUTHMACHER; JOAN ISCHINGER; GEORGE JEFFORDS; KENNETH H JONES, On behalf of Marianne Jones; EMILY KEMPER; ALAN LEVIN; DIANE LEVIN; SYLVIA H LOHMAN; DAVID P MATTHEWS; KEN J MCCALL; MARY FAYE MCCALL; LANCE MILLER; BARBARA MILLER; EDWARD O'ROURKE; KATHRYN O'ROURKE; FRANK PARGAC; DEBRA PARGAC; ALEX PEZDEK; ARLENE RAWITSCHER; JOHN B BOWE; JEFFREY E SHAINOCK; ROBERT TILOTTA; THOMAS TOSONI; BILL W VERNON; SHAUN WYMES; NANCY BELL, Personal Representative of the Estate of Howard Earl Bell

          Plaintiffs - Appellants

   v.

ANDREW S FASTOW; KENNETH L LAY; JEFFREY J SKILLING; RICHARD B BUY; RICHARD CAUSEY; KEN L HARRISON; MICHAEL J KOPPER; PAULO V FERRAZ PEREIRA; JOHN WAKEHAM; BEN GLISAN KRISTINA MOURDAUNT; D STEPHEN GODDARD, JR; DAVID DUNCAN; ARTHUR ANDERSEN LLP; LOU L PAI; THE FINANCIAL INSTITUTIONS

          Defendants - Appellees

_____

DON L GUY, Trustee for the Guy Family Living Trust; JACK MANNING; SUE MANNING; MARY H PEARSON; CURTIS D ROBERT; GREG SWINDENSKY; BARRY M WUNTCH; DOROTHY ZEIGFINGER; HAROLD ZEIGFINGER, Co-Trustees Harold & Dorothy Zeigfinger Family Trust; CHARLES H ADDERHOLD; ARNOLD GREENBERG; REGAN YARDLEY; HAROLD SPEARS; SUZANNE C SPEARS; LENORA HARTMANN; JOSEPH HAMER; PATRICIA A THOMAS; ALFRED URBANEK; ADRIENNE SAMUELS; ROBERT HERZBERG; FRANCES R MATTINGLY; GEORGE J COOKE; DEBRA C LEVENSON; WILLIS BARTAK; JOYCE W RICHARDSON; JIM BEMIS; ROSANNA KAAR; WILLIAM P TODSEN; JOSEPH TENNARO; THEODORE A MARCINIAK; MARTIN KAY; JUDITH

KAYE, Trustee for the Kaye Family Trust; STANLEY JACK ABRAMS LAWRENCE P TREADWELL; THOMAS J REGAN; MARTHA SEARS, Personal Representative of the Estate of Kaylor Wilkins

       Plaintiffs - Appellants

  v.

ARTHUR ANDERSEN LLP; THOMAS H BAUER; MICHAEL L BENNETT; JOSEPH F BERADINO; DEBRA A CASH; DAVID B DUNCAN; JAMES A FRIEDLIEB; D STEPHEN GODDARD, JR; GARY B GOOLSBY; GREGORY W HALE; MICHAEL M LOWTHER; MICHAEL C ODOM; ROGER WILLARD; RICHARD B BUY; RICHARD CAUSEY; ANDREW S FASTOW; BEN GLISAN; KEVIN HANNON; KEN L HARRISON; JOSEPH M HIRKO; STANLEY C HORTON; KEVIN A HOWARD; MICHAEL J KOPPER; KENNETH L LAY; JEFF MCMAHON; KRISTINA MOURDAUNT; LOU PAI; KENNETH D RICE; JEFFREY K SKILLING; JOHN WAKEHAM; PAULO V FERRAZ PEREIRA; F SCOTT YEAGER; THE FINANCIAL INSTITUTIONS

       Defendants - Appellees

_____

CYNTHIA L ADAMS; COURTNEY L ALLEN; MARIA M ALTINGER; SUSAN L DAVIS; WILDA B DAVIS; MARY ANN FISHER; RUTH E FLOURNOY; FRANK W GEROLD; FRANK W GEROLD, On Behalf of the Estate of Patricia M Gerold; DOROTHY L PIERCE; DOUGLAS P PIERCE; GERALD E SEDLACEK; JEANETTE A SEDLACEK; CARL TRAGESSER; ROBERT F WOHLFARTH; ERNEST J SCHWARTZ; EDITH SCHWARTZ; VERN C SMITH; NANCY S ROBERTSON; GEORGE FRASER; MAURINE D FRASER; JACOB J TAMBORELLO; PHYLLIS F TAMBORELLO; JOHN W PETERSON; CAROLYN JANE PETERSON; WILLIAM E TOLSON; RICHARD F MILLER; PETER JENNINGS; STEPHEN JENNINGS; LINDA JENNINGS, Trustees for the Stephen and Linda Jennings Trust; STEPHEN O JENNINGS, Trustee for the Susan Trust; LEROY W PICKENS; JOHN A TUTHILL; THOMAS K HUISKAMP; ROBERT W SLOAN; GEORGE CAUBLE, JR, Doctor; ARUN MISRA; JAY MISRA; CLYDE CARPENTER; CAROLYN CARPENTER

       Plaintiffs - Appellants

  v.

ARTHUR ANDERSEN LLP; THOMAS H BAUER; MICHAEL L BENNETT; JOSEPH F BERARDINO; DEBRA A CASH; DAVID B DUNCAN; JAMES A FRIEDLIEB; D STEPHEN GODDARD, JR; GARY B GOOLSBY; GREGORY W HALE; MICHAEL M LOWTHER; MICHAEL C ODOM; ROGER WILLARD; RICHARD B BUY; RICHARD CAUSEY; ANDREW S FASTOW; BEN GLISAN; KEVIN HANNON; KEN L HARRISON; JOSEPH M HIRKO; STANLEY C HORTON; KEVIN A HOWARD; MICHAEL J KOPPER; KENNETH L LAY; JEFF MCMAHON; KRISTINA MOURDAUNT; LOU PAI; PAULO V FERRAZ PEREIRA; KENNETH D RICE; JEFFREY K SKILLING; JOHN WAKEHAM; F SCOTT YEAGER; THE FINANCIAL INSTITUTIONS

      Defendants - Appellees

_____

JANE BULLOCK; JOHN BARNHILL; JANE BARNHILL; ROBERT MORAN; MILTON TATE, Co-Trustees for Moorman, Tate, Moorman & Urquhart Money Purchase Plan and Trust; SUDIE STARK; DELBERTH H STARK, JR; LEON TOUBIN; BARNHILL-NEWMAN; HAL MOORMAN, Co-Trustees for Moorman, Tate, Moorman & Urquhart Money Purchase Plan and Trust; ROBERT STARK, MD; HENRY BOEHM, MD; MARVALYN REILAND, Personal Representative of Donald Reiland's Estate

      Plaintiffs - Appellants

  v.

ARTHUR ANDERSEN LLP; D STEPHEN GODDARD, JR; DEBRA A CASH; ROGER WILLARD; THOMAS H BAUER; DAVID B DUNCAN; ANDREW S FASTOW; KENNETH L LAY; JEFFREY K SKILLING; THE FINANICAL INSTITUTIONS

      Defendants - Appellees

———————————

Appeal from the United States District Court
for the Southern District of Texas

———————————

Before GARZA, STEWART, and DENNIS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

This appeal involves ten cases ("Fleming" cases)[1] arising from the collapse of the Enron Corporation ("Enron"). Plaintiffs-Appellants ("Fleming" plaintiffs) are former Enron investors. Defendants-Appellees ("Anderson" defendants) include former Enron management, Enron's former accounting firm, various partners of that accounting firm named in their individual capacities, and certain financial institutions.[2] Enron itself, however, is not among the defendants-appellees. Nine of the Fleming cases ("Ahlich" cases) originally were filed in state court.[3] The tenth Fleming case ("Odam" case) was filed in federal

---

[1] The law firm Fleming & Associates LLP ("Fleming") represents the plaintiffs in these various cases. The District Court adopted "Fleming" to refer to the cases. For the sake of simplicity and consistency, we do so as well.

[2] Per our order of June 5, 2008, the following defendants-appellees have been dismissed: Rebecca Mark-Jusbasche; JP Morgan Chase & Co.; JP Morgan Chase Bank, N.A.; JP Morgan Securities Inc.; Citigroup Inc.; Citibank N.A.; Citicorp Global Markets Inc.; Canadian Imperial Bank of Commerce; CIBC Inc.; and CIBC World Markets Corp. Our June 5, 2008 order also dismisses Citibank Inc. and Citigroup Global Markets Ltd., neither of whom appear as defendants-appellees in this case.

[3] The nine Ahlich cases are: *Ahlich et al. v. Arthur Anderson LLP et al.*, No. 4:03-CV-05334, filed in the 272nd Judicial District of Brazos County, Texas on January 29, 2002, and removed to the Southern District of Texas on November 20, 2003; *Bullock et al. v. Arthur Anderson LLP et al.*, No. 4:04-CV-04455, filed in the 21st Judicial District of Washington County, Texas on January 24, 2002, removed to the Western District of Texas on May 11, 2004, and transferred to the Southern District of Texas on November 15, 2004; *Adams et al. v. Anderson et al.*, No. 4:04-CV-03331, filed in the 234th Judicial District of Harris County, Texas on June 22, 2004, and removed to the Southern District of Texas on August 20, 2004; *Guy et al. v. Arthur Anderson LLP et al.*, No. 4:04-CV-03330, filed in the 55th Judicial District of Harris County, Texas on June 22, 2004, and removed to the Southern District of Texas on August 20, 2004; *Delgado et al. v. Fastow et al.*, No. 4:04-CV-05335, filed in the 55th Judicial District of Harris County, Texas on January 4, 2002, and removed to the Southern District of Texas on November 20, 2003; *Rosen et al. v. Fastow et al.*, No. 4:03-CV-05333, filed in the 333rd Judicial District of Harris County, Texas on November 7, 2001, and removed to the Southern District of Texas on November 20, 2003; *Pearson et al. v. Fastow et al.*, No. 4:03-CV-05332, filed in the 164th Judicial District of Harris County, Texas on January 7, 2002, and removed to the Southern District of Texas on November 20, 2003; *Choucroun et al. v. Arthur Anderson LLP et al.*, No. 4:03-CV-03320, filed in the 21st Judicial District of Washington County, Texas on January 24, 2002, removed to the Western District of Texas on February 27, 2003, and transferred to the Southern District of Texas on August 15, 2003; *Jose et al. v. Anderson et al.*, No. 4:03-CV-01087, filed in the 272nd Judicial District of

court.[4]  The Ahlich plaintiffs appeal from a District Court decision denying leave to amend their complaints.  Both the Ahlich plaintiffs and the Odam plaintiff appeal from a District Court order dismissing all of their claims as preempted by the Securities Litigation Uniform Standards Act, 15 U.S.C. § 78bb ("SLUSA"). We affirm.

I

The background facts concerning the rise and fall of Enron are commonly known and, for the purposes of this appeal, are adequately set forth in our opinion in Newby v. Enron Corp., 394 F.3d 296 (5th Cir. 2004):

> Throughout the 1990's Enron sold natural gas, electricity, and communications products to a variety of customers.  Its share price soared through mid-2001, partially as a result of promising financial reports.  The meteoric rise of Enron stock allowed industry insiders to reap windfall gains.  The bubble burst on October 16, 2001, when Enron announced a shocking $618 million loss for the quarter, a figure attributable to the company's decision to reduce falsely inflated income and report concealed losses from earlier accounting periods.  On November 8, 2001, Enron revealed that its accounting practices violated a number of laws and industry norms and that audit reports for 1997-2000 were inaccurate.  Enron's share price fell precipitously, it [declared] bankrupt[cy], and many of its senior officers [were] indicted.

Id. at 299.  Enron filed for Chapter 11 bankruptcy protection in December 2001. The Bankruptcy Court confirmed Enron's debtors' plan on July 15, 2004, and the plan became effective on November 17, 2004.  As a result of the Enron debacle, lawsuits against Enron and various persons and entities that allegedly contributed to its collapse were filed in state and federal courts across the country.  This appeal involves ten such suits.

---

Bexar County, Texas on February 7, 2002, removed to the Western District of Texas on December 23, 2002, and transferred to the Southern District of Texas on March 21, 2003.

[4] The Odam case, Odam et al. v. Enron et al., 4:01-CV-03914, was filed in the Southern District of Texas on November 31, 2001.

The District Court in this case is the multi-district litigation transferee for all Enron-related litigation. Newby v. Enron ("Newby") is the lead case for the securities group of cases consolidated under In re Enron. Judge Harmon has ruled on numerous motions and been engaged in the considerable task of managing this complex litigation. The Fleming law firm also has been heavily involved in the Enron-litigation. Indeed, the Fleming law firm has filed numerous lawsuits in state and federal courts, alleging securities fraud arising out of the business failure of Enron. The Fleming firm purports to represent several hundred clients with claims arising out of Enron's collapse. These facts notwithstanding, the Fleming firm's performance has been less than exemplary.

In Newby, 302 F.3d 295, 298 (5th Cir. 2002), we upheld an injunction that the District Court entered to prevent the Fleming firm from filing any new Enron-related actions without leave of the District Court. In so doing, we observed that the District Court was "attempting to rein in a law firm that represents over 750 plaintiffs but has artfully avoided [SLUSA] by filing lawsuits in counties across the State of Texas that are not denominated class actions and each with fewer than 50 plaintiffs." Id. at 302. Because these state court suits involved "unjustified and duplicative requests for ex parte temporary restraining orders, without notice to lawyers already across the counsel table from Fleming and engaged in the prosecution and defense of virtually identical claims in federal suits," we "saw these moves in state court to be unjustified efforts to harass parties to the federal cases" and concluded "that Fleming's actions constitute a sufficiently serious and systematic abuse of the courts to warrant the injunction." Id. at 302-03.

Later, in Newby, 338 F.3d 467, 475 (5th Cir. 2003), we observed that the Fleming law firm was continuing its pattern of harassing behavior through "requests for temporary injunctions in the state court in . . . an attempt to taunt the parties and the court and to undermine the district court's ability to control

the consolidated litigation." Accordingly, we upheld an injunction that barred the Fleming law firm "from seeking injunctions in the state case without first seeking leave of the federal court." Id. at 476. This Enron-related history, of course, is merely a backdrop for the few facts necessary to resolve this appeal.

Fleming filed the nine Ahlich cases in state court. They were removed to the federal courts under "related to" bankruptcy jurisdiction. They ultimately were consolidated in the Southern District of Texas by virtue of direct removal or pursuant to the Multi-District Litigation statute, 28 U.S.C. § 1407 ("MDL"). Fleming filed the tenth case, Odam, in the Southern District of Texas.[5] The ten Fleming cases allege virtually identical state law claims for fraud, fraud on the market, civil conspiracy, aiding and abetting, negligent misrepresentation, negligence, violations of the Texas Business and Commerce Code, and violations of the Texas Securities Act. Throughout the federal litigation, the Fleming plaintiffs have acted in unison: they are represented by the same attorneys; have filed nearly identical complaints; have jointly scheduled discovery; have filed joint motions; have provided nearly identical discovery responses; and have identified the same experts and relied upon the same expert reports.

On August 17, 2006, the Odam plaintiff amended her complaint as of right pursuant to FED. R. CIV. P. 15(a), to allege only violations of state law and to add certain defendants. Pursuant to the District Court's July 11, 2003, scheduling order (as amended July 11, 2006), the Ahlich plaintiffs sought leave to amend

---

[5] In total, the Fleming cases represent 196 plaintiffs. There are 171 plaintiffs before the Southern District of Texas by virtue of direct removal. See *Adams*, No. 4:04-CV-03331 (40 plaintiffs); *Guy*, No. 4:04-CV-03330 (36 plaintiffs); *Delgado*, No. 4:04-CV-05335 (42 plaintiffs); *Ahlich*, No. 4:03-CV-05334 (39 plaintiffs); *Rosen*, No. 4:03-CV-05333 (12 plaintiffs); and *Pearson*, No. 4:03-CV-05332 (2 plaintiffs). There are 24 plaintiffs before the Southern District of Texas by virtue of removal to other federal courts and then transfer to the Southern District of Texas. *See Bullock*, No. 4:04-CV-04455 (13 plaintiffs); *Choucroun*, No. 4:03-CV-03320 (7 plaintiffs); and *Jose*, No. 4:03-CV-01087 (4 plaintiffs). There is one plaintiff before the Southern District of Texas by virtue of direct filing. See Odam, No. 4:01-CV-03914.

their complaints similarly on August 17, 2006. The District Court denied leave to amend the Ahlich complaints and dismissed all ten of the Fleming cases, finding that they were preempted by SLUSA. Specifically, the District Court held that "the motions for leave to amend should be denied as futile, that the exclusively state law claims in these nine cases are preempted by [SLUSA], and that the cases should therefore be dismissed with prejudice." The District Court also held that Odam "is preempted for the same reasons and the case should also be dismissed." In short, the Fleming plaintiffs seek to bring claims under state securities law only, and the District Court held that SLUSA preempts all such state claims. Accordingly, the District Court dismissed the Fleming plaintiffs' claims.

II

This appeal turns on two issues: (A) whether the District Court had bankruptcy jurisdiction over the Fleming cases at the time it dismissed the Fleming plaintiffs' claims and (B) whether SLUSA preempts the Fleming plaintiffs' claims. The determination of whether a federal court has bankruptcy jurisdiction over a given case "is a legal determination which we review de novo." In re Prescription Home Health Care, Inc., 316 F.3d 542, 546-47 (5th Cir. 2002) (citations omitted). We likewise "review questions of statutory interpretation," like the interpretation of SLUSA, "de novo." United States v. Clayton, 506 F.3d 405, 409 (5th Cir. 2007) (citations omitted).[6]

---

[6] Once we answer these two antecedent inquiries, we review the ultimate decision of the District Court "to deny [Fleming] leave to amend its complaint[s] for abuse of discretion." United States ex rel. Adrian v. Regents of the Univ. of California, 363 F.3d 398, 403 (5th Cir. 2004) (citing United States ex rel. Willard v. Humana Health Plan of Tex., Inc., 336 F.3d 375, 387 (5th Cir. 2003)). Because we conclude that the District Court had bankruptcy jurisdiction over the Fleming cases at the time it dismissed their claims and because we conclude that SLUSA preempts all of the Fleming plaintiffs' claims, we hold that the District Court did not abuse its discretion in denying the Ahlich plaintiffs' motion for leave to amend their complaints as futile. See Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 872-73 (5th Cir. 2000) ("It is within the district court's discretion to deny a motion to amend if it is futile.") (citing Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of America Co., 195 F.3d 765,

A

The District Court dismissed the Fleming cases with prejudice after it had confirmed Enron's debtors' plan and after the plan's effective date had passed. The Fleming plaintiffs argue that the District Court had no authority to dismiss their cases with prejudice because it lacked subject matter jurisdiction over them at the time of its decision. Specifically, the Fleming plaintiffs point out that "related to" bankruptcy jurisdiction was the sole basis for federal jurisdiction over its state law claims; and thus, according to the Fleming plaintiffs, federal jurisdiction ceased to exist over them upon the confirmation of Enron's bankruptcy plan. Indeed, the Fleming plaintiffs contend that we never have approved the exercise of post-confirmation bankruptcy jurisdiction over claims, unless those claims pertained to the implementation or execution of the plan.

The Anderson defendants counter that the District Court had subject matter jurisdiction at the time of its decision dismissing the Fleming cases with prejudice. Specifically, the Anderson defendants point out that the Fleming plaintiffs do not challenge the initial removal of their cases on "related to" bankruptcy grounds. This fact, the Anderson defendants contend, is fatal to the Fleming plaintiffs' argument because cases properly removed on the basis of "related to" bankruptcy jurisdiction remain within the jurisdiction of the federal district court through final adjudication. Indeed, the Anderson defendants argue that developments subsequent to proper removal, such as the confirmation of a bankruptcy plan, cannot extinguish the subject matter jurisdiction of a federal court. Finally, the Anderson defendants point out that the Fleming firm filed all ten Fleming cases before the District Court confirmed Enron's reorganization plan. Seven of the Ahlich cases were removed before plan confirmation,[7] the

---

771 (5th Cir. 1999); Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994)).

[7] These seven cases are: Bullock, No. 4:04-CV-04455; *Delgado*, No. 4:04-CV-05335; *Ahlich*, No. 4:03-CV-05334; *Rosen*, No. 4:03-CV-05333; *Pearson*, No. 4:03-CV-05332; *Choucroun*,

remaining two Ahlich cases were removed before the plan's effective date,[8] and the Odam case never was removed because the Fleming firm filed it in the Southern District of Texas in the first instance. Moreover, the Anderson defendants point out that all of the Fleming plaintiffs' claims relate to Enron's pre-bankruptcy activities. These facts, the Anderson defendants contend, distinguish the Fleming claims from post-confirmation claims relating to post-confirmation activities over which there may not be bankruptcy jurisdiction.

The parties do not dispute whether the District Courts had "related to" bankruptcy jurisdiction over the Fleming cases that were removed pre-confirmation at the time of removal. See 28 U.S.C. § 1334(b) ("[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings . . . related to cases under title 11.") (emphasis added). The question here is whether the District Court, after confirming Enron's bankruptcy plan, maintained "related to" jurisdiction at the time it dismissed the Fleming cases.

We previously have stated that "Section 1334 does not expressly limit bankruptcy jurisdiction upon plan confirmation." In re U.S. Brass Corp., 301 F.3d 296, 304 (5th Cir. 2002). Other Circuits agree, holding that "if 'related to' jurisdiction actually existed at the time of . . . removal" subsequent events "[can]not divest the district court of that subject matter jurisdiction." In re Celotex Corp., 124 F.3d 619, 626 (4th Cir. 1997) (citing Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991)). But at the same time, this Court has stated that "[a]fter a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." In re Craig's

---

No. 4:03-CV-03320; and *Jose*, No. 4:03-CV-01087.

[8] These two cases are: *Adams*, 4:04-CV-03331; and *Guy*, No. 4:04-CV-03330.

Stores of Texas, Inc., 266 F.3d 388, 390 (5th Cir. 2001) (citations omitted). Although these statements may seem contradictory, they are easily reconciled.

The plaintiff in Craig's Stores filed a breach of contract action in the bankruptcy court eighteen months after the court had approved the reorganization plan. The Craig's Stores Court held that there was no bankruptcy jurisdiction over such an action and dismissed. Craig's Stores, 266 F.3d at 389. Three factors were critical to its decision: first, the claims at issue "principally dealt with post-confirmation relations between the parties;" second, "[t]here was no antagonism or claim pending between the parties as of the date of the reorganization;" and third, "no facts or law deriving from the reorganization or the plan [were] necessary to the claim." Craig's Stores, 266 F.3d at 391. Notwithstanding its statement that bankruptcy jurisdiction exists after plan confirmation only "for matters pertaining to the implementation or execution of the plan," the facts in Craig's Stores were narrow; they involved post-confirmation claims based on post-confirmation activities. Id. at 390. Thus, Craig's Stores does not conflict with Celotex because the Craig's Stores decision did not divest the bankruptcy court of jurisdiction over any claims. See id. at 390; see Celotex, 124 F.3d at 626 (holding that events cannot divest a court of jurisdiction over claims within "related to" jurisdiction). The Craig's Stores Court did hold that a bankruptcy court may lack jurisdiction over post-confirmation claims based on post-confirmation activities, but the Craig's Stores Court did not hold that a bankruptcy court may lose jurisdiction over pre-confirmation claims based on pre-confirmation activities, like those in this case. See Craig's Stores, 266 F.3d at 389-90.[9]

---

[9] This reading of Craig's Stores is consistent with In re Enron Corp., 2005 WL 1745471 (S.D. Tex. 2005). In that case, the District Court held that it lacked bankruptcy jurisdiction over claims based on pre-confirmation activities because the claims were raised post-confirmation. Considering that the claims were raised post-confirmation, the District Court held that such claims could not create jurisdiction; it said nothing as to whether it could

15

The Fleming plaintiffs' claims fall well outside the first two Craig's Stores factors: they concern pre-confirmation relations between the parties, and it is undisputed that the claims were raised pre-confirmation. Neither party presents arguments concerning the third Craig's Stores factor: whether facts or law deriving from Enron's bankruptcy plan are necessary to resolve the Fleming claims. Even if they did, such arguments would be of no consequence because the first two Craig's Stores factors weigh heavily in favor of federal jurisdiction. Accordingly, the Fleming plaintiffs find no support in Craig's Stores for the proposition that plan confirmation divests a District Court of bankruptcy jurisdiction over pre-confirmation claims based upon pre-confirmation activities.[10]

Fleming cannot point to a single case in which we have held that plan confirmation divests a District Court of bankruptcy jurisdiction over pre-confirmation claims based on pre-confirmation activities that properly had been removed pursuant to "related to" jurisdiction. We likewise find none. Accordingly, we hold that the District Court had bankruptcy jurisdiction over the Fleming plaintiffs' claims at the time it issued its decision dismissing them with prejudice. See Celotex, 124 F.3d at 626 (holding that "if 'related to' jurisdiction

maintain jurisdiction over the very same claims if they had been raised pre-confirmation. See id. at *1, 4-8.

[10] In addition to relying on Craig's Stores, the Fleming plaintiffs contend that our decisions in In re Bissonnet Invs. LLC, 320 F.3d 520 (5th Cir. 2003) and In re U.S. Brass Corp., 301 F.3d 296 (5th Cir. 2002), support their argument that bankruptcy plan confirmation divested the District Court of jurisdiction. Our decision in Bissonnet did not concern the issue presented here: whether bankruptcy jurisdiction continues to exist over pre-confirmation claims based on pre-confirmation activities following confirmation of the debtors' plan. Our decision in U.S. Brass is relevant to the extent that it applied the Craig's Stores test for bankruptcy jurisdiction. U.S. Brass, however, concerned post-confirmation claims; this case concerns pre-confirmation claims. Nevertheless, in U.S. Brass we held that bankruptcy jurisdiction existed even over post-confirmation claims because those claims related to the implementation or execution of the plan. Neither Bissonnet nor U.S. Brass changes our decision that the District Court had bankruptcy jurisdiction over the Fleming claims at the time it dismissed them with prejudice. See U.S. Brass, 301 F.3d at 304-05.

actually existed at the time of . . . removal" subsequent events "[can]not divest the district court of that subject matter jurisdiction").

B

The District Court denied the Ahlich plaintiffs' motion for leave to amend their complaints as futile and dismissed all ten Fleming cases finding that all claims raised therein were preempted by SLUSA. The Fleming plaintiffs contend that the District Court erred in holding that SLUSA preempts their state law claims, and therefore, the District Court should not have dismissed their cases with prejudice. Specifically, the Fleming plaintiffs argue that, for preemption purposes, SLUSA's definition of a "covered class action" should be applied only at the time a state action is removed to federal court, not after a federal court issues a consolidation order. Indeed, the Fleming plaintiffs contend that their interpretation of SLUSA follows from a plain reading of the statutory text and honors the basic precept that federal subject matter jurisdiction be determined at the time of removal. Moreover, the Fleming plaintiffs argue that if the District Court decision stands, federal courts will be able to manufacture SLUSA preemption by issuing consolidation orders. According to the Fleming plaintiffs, this result is contrary to SLUSA's goal of preserving individual state securities cases and places the MDL on a collision course with SLUSA. Finally, the Fleming plaintiffs contend that SLUSA's legislative history supports their interpretation of the statute.

The Anderson defendants counter that the District Court correctly held that SLUSA preempts the Fleming plaintiffs' claims. As a backdrop for their argument, the Anderson defendants point out that the fundamental purpose of SLUSA is to provide uniform, national standards for litigation concerning a defined set of nationally marketed securities. To that end, the Anderson defendants argue that SLUSA functions as both a "removal" and a "dismissal" statute. The Anderson defendants argue that SLUSA's definition of a "covered

class action" encompasses all claims that are consolidated or that proceed as a single action, whether in state or federal court, including the Fleming plaintiffs' claims. According to the Anderson defendants, this interpretation of SLUSA follows from its text, adheres to well-accepted principles of statutory construction, and is supported by SLUSA's legislative history. In addition, the Anderson defendants argue that their interpretation of SLUSA prevents plaintiffs from filing countless individual actions in federal or state court and thus advances SLUSA's goal of stopping plaintiffs from circumventing the uniform national securities law standards set forth by the Private Securities Litigation Reform Act ("PSLRA"). Finally, the Anderson defendants contend that there is no conflict between SLUSA and the MDL.

To fully understand SLUSA, we must recount the evolution of federal securities law. "In response to the sudden and disastrous collapse in prices of listed stocks in 1929, and the Great Depression that followed, Congress enacted the Securities Act of 1933 . . . and the Securities Exchange Act of 1934." Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Dabit, 547 U.S. 71, 78 (2006). "Since their enactment, these two statutes have anchored federal regulation of vital elements of our economy." Id. However, by the 1990s, Congress determined that "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests, and manipulation by class action lawyers of the clients whom they purportedly represent had become rampant" under these statutes. Id. at 81. In response to these "perceived abuses of the class-action vehicle in litigation involving nationally traded securities," Congress enacted the PSLRA in 1995 to eliminate the "ways in which the class action device was being used to injure the entire U.S. economy." Id. (citations omitted).

Under the PSLRA, plaintiffs in federal securities cases face: limits on damages and on attorneys' fees; a safe harbor provision for forward-looking statements; restrictions on the selection of (and compensation awarded to) lead

plaintiffs; sanctions for frivolous litigation; a mandatory discovery stay pending resolution of any motion to dismiss; and heightened pleading requirements. See id. at 81. The PSLRA, however, produced an unintended consequence; rather than confronting the restrictive conditions set forth by the PSLRA, plaintiffs began filing class-action securities lawsuits under state law, often in state court. See id. at 82. "To stem this shift from Federal to State courts and prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [PSLRA], Congress enacted SLUSA." Id. at 82. SLUSA provides, in relevant part:

(f) Limitations on remedies.

(1) Class action limitations. No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--

(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

(2) Removal of covered class actions.

Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

15 U.S.C. § 78bb(f)(1)-(2) (emphasis added). SLUSA defines a "covered class action" as follows:

(B) Covered class action.

The term "covered class action" means-- . . .

> (ii) any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which--
>
>> (I) damages are sought on behalf of more than 50 persons; and
>>
>> (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

15 U.S.C. § 78bb(f)(5)(B)(ii) (emphasis added).[11] The stated purpose of SLUSA is "to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives" of the PLSRA. Merrill, 547 U.S. at 86 (citations omitted). Thus, SLUSA advances "the congressional preference for national standards for securities class action lawsuits involving nationally traded securities." Id. at 87 (citations omitted). Congress also has indicated that the federal courts should interpret SLUSA broadly to achieve these goals:

> [W]hile the committee believes that it has effectively reached those actions that could be used to circumvent the reforms enacted by Congress in 1995 as part of the Private Securities Litigation Reform Act, it remains the Committee's intent that [SLUSA] be interpreted broadly to reach mass actions and all other procedural devices that might be used to circumvent the class action definition.

In re WorldCom, Inc. Sec. Litig., 308 F. Supp. 2d 236, 242 (S.D.N.Y. 2004) ("WorldCom") (quoting S. REP. NO. 105-182, 1998 WL 226714, *8 (1998)); see Merrill, 547 U.S. at 86 (observing that "Congress envisioned a broad construction" of SLUSA and that "a narrow reading would undercut the effectiveness of the [PSLRA] and thus run contrary to SLUSA's stated purpose

---

[11] Section 78bb(f)(5)(B)(i) sets forth the circumstances under which a single lawsuit falls within the definition of a "covered class action." Because this appeal involves multiple lawsuits, Section 78bb(f)(5)(B)(i) does not apply.

. . . ."). We likewise have acknowledged that SLUSA should be interpreted broadly to accomplish the goals of the PSLRA. See Newby v. Enron Corp., 338 F.3d 467, 472 (5th Cir. 2003) ("[I]n enacting SLUSA Congress sought to curb all efforts to circumvent the reforms put into place by PSLRA."); see also Miller v. Nationwide Life Ins. Co., 391 F.3d 698, 701 (5th Cir. 2004) ("[W]e have previously recognized that SLUSA was designed to ensure that all causes of action involving allegations of misrepresentation or omission in connection with covered securities would be subject to the requirements of the [PSLRA].").

SLUSA preempts a securities class action if four conditions are satisfied: (1) the action is a "covered class action;" (2) the claims are based on state law; (3) the action involves one or more "covered securities;" and (4) the claims allege a misrepresentation or omission of material fact "in connection with the purchase or sale" of the security. See Miller, 391 F.3d at 701; Herndon v. Equitable Variable Life Ins. Co., 325 F.3d 1252, 1253 (11th Cir. 2003). The parties in this case do not dispute that the claims are based on state law, involve covered securities, or allege a misrepresentation or omission of material fact in connection with the purchase or sale of the securities. Accordingly, there is no dispute that SLUSA's second, third, and fourth conditions are met. The only dispute is whether SLUSA's first condition is met, namely, whether the Fleming plaintiffs' claims fall within the definition of a "covered class action."

A group of lawsuits, like the Fleming lawsuits, constitutes a "covered class action" if: (1) the suits are "pending in the same court;" (2) the suits involve "common questions of law or fact;" (3) "damages are sought on behalf of more than 50 persons;" and (4) "the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(B)(ii). We never have applied this "covered class action" framework to determine whether a group of lawsuits pending in the same District Court may constitute a "covered class action" under SLUSA. A recent decision of the Southern District of New

York, however, has tackled this same question on facts similar to those in this case. See WorldCom, 308 F. Supp. 2d at 238.[12]

WorldCom involved securities cases arising from the collapse of WorldCom, Inc. ("WorldCom"). The WorldCom plaintiffs filed ten separate lawsuits in the state courts of nine separate Mississippi counties alleging identical securities fraud and negligence claims under state law. See id. Each suit was brought on behalf of five to forty-eight plaintiffs in an admitted effort to avoid SLUSA. See id. at 240. In total, there were 293 plaintiffs in WorldCom. See id. In light of the pending WorldCom bankruptcy, the WorldCom suits were removed to federal court under "related to" bankruptcy jurisdiction and consolidated, as were the Fleming cases here. See id. at 239. Like the Anderson defendants here, the defendants in WorldCom moved to dismiss the claims against them, arguing that the lawsuits constituted a "covered class action" and therefore were preempted by SLUSA. See id. at 241.

The WorldCom Court began its analysis by observing, as we have in this case, that "the only dispute is whether [this] action is a 'covered class action.'" Id. at 243. Analyzing the cases decided under SLUSA's "group of lawsuits" provision, the WorldCom Court noted at the outset that there was no dispute that the suits, taken together, were brought on behalf of more than 50 persons considering that 293 plaintiffs had filed the same claims under Mississippi law. See id. at 245. In addition, the WorldCom Court held that there was no question that the suits involved common questions of law or fact considering that the complaints were nearly identical. See id. Therefore, according to the WorldCom Court, only the first and fourth "covered class action" factors were at issue: whether the suits were pending in the same court and whether they were joined, consolidated, or proceeding as a single action for any purpose. See id.

---

[12] The District Court relied heavily on WorldCom in reaching its decision in this case.

The WorldCom Court analyzed these two issues in turn. First, the WorldCom Court analyzed whether the suits were "pending in the same court." Id. The Court observed that SLUSA did not limit "pending in the same court" to a "state" court or a "federal" court. See id. at 245-46; 15 U.S.C. § 78bb(f)(5)(B)(ii). Thus, the Court dismissed the plaintiffs' contention that SLUSA applies only to cases proceeding as a single action in state court because no such limitation appears in the statute. See WorldCom, 308 F. Supp. 2d at 246. Indeed, the Court observed that "SLUSA was explicitly intended to cover lawsuits filed or pending in state or federal court." Id. Therefore, based on the plain text of SLUSA, the Court held that the WorldCom suits were pending in the same court, namely the Southern District of New York. See id. Second, the Court analyzed whether the suits were joined, consolidated, or proceeding as a single action. See id. at 246-47. Specifically, the Court observed that: the same attorneys represented the plaintiffs in every case; their complaints were nearly identical; subsequent court papers were identical; the plaintiffs filed joint motions; and the plaintiffs generally acted in unison. See id. Therefore, the Court held that the WorldCom suits were proceeding as a single action. See id. Finally, the Court observed that SLUSA removal was not being used to bootstrap a finding of SLUSA preemption because the WorldCom cases had been removed, as have the Fleming cases, pursuant to bankruptcy jurisdiction. See id. at 246. Accordingly, the WorldCom Court dismissed the cases with prejudice finding that SLUSA preempted the state law claims under any circumstances. See id. at 249.

We agree with the well-reasoned analysis of the WorldCom Court.[13] Accordingly, we apply the same principles here. Like the parties in WorldCom,

---

[13] We previously have approved of the basic principle set forth in the WorldCom decision that SLUSA should be interpreted broadly to prevent plaintiffs from circumventing the PSLRA. See Miller, 391 F.3d at 702.

the parties in this case do not dispute that the group of lawsuits at issue, the Fleming lawsuits, involves more than fifty plaintiffs and common questions of law or fact. See id. at 245; 15 U.S.C. § 78bb(f)(5)(B)(ii). In addition, like the WorldCom suits, the Fleming suits are all pending in the same Court, the Southern District of Texas. See WorldCom, 308 F. Supp. 2d at 245-46. Accordingly, the only question is whether the Fleming lawsuits "are joined, consolidated, or otherwise proceed as a single action for any purpose." See 15 U.S.C. § 78bb(f)(5)(B)(ii).

We need not determine whether the Fleming cases are "joined" or "consolidated" within the meaning of SLUSA because we hold that the Fleming cases are "proceed[ing] as a single action." There is no legitimate dispute that the Fleming cases are pending in the same court, the Southern District of Texas. See § 78bb(f)(5)(B)(ii). Moreover, like the WorldCom cases, the Fleming cases have proceeded as a single action because the plaintiffs have acted in unison throughout the litigation: they filed nearly identical complaints; jointly scheduled discovery; filed joint motions, provided nearly identical discovery responses; and used the same experts and expert reports. Indeed, as the Anderson defendants' counsel pointed out at oral argument, the Fleming plaintiffs' damages expert provided a single damages figure for the plaintiffs in all ten cases. Accordingly, the Fleming cases plainly fall within the definition of a "covered class action," and therefore SLUSA preempts their claims unless some other consideration saves them from preemption. See WorldCom, 308 F. Supp. 2d at 245-47.

The consideration which, according to the Fleming plaintiffs, saves their claims from SLUSA preemption and dismissal is that SLUSA's definition of a "covered class action" may be applied to preempt claims only at the time of their removal, not at the motion to dismiss stage. As support for this proposition, Fleming makes two principal arguments:

24

First, the Fleming plaintiffs argue that SLUSA functions exclusively as a removal statute, designed solely to determine whether federal subject matter jurisdiction exists at the time of removal based upon whether a group of lawsuits constitutes a "covered class action." This narrow reading of SLUSA ignores its separate preemption provision in Section (f)(1). There is no question that SLUSA functions as both a preemption and a removal statute. Section (f)(1) deals with preemption, and Section (f)(2) deals with removal. There also is no question that, under SLUSA, both preemption and removal depend upon whether a group of lawsuits constitutes a "covered class action." See 15 U.S.C. § 78bb(f)(5)(B). To determine whether a group of lawsuits constitutes a covered class action, we first ask whether they were "filed in or [are] pending in the same court." 15 U.S.C. § 78bb(f)(5)(B)(ii). SLUSA does not require that this test only be applied upon filing or upon removal as the Fleming plaintiffs' contend. Rather, by requiring only that the group of lawsuits be "filed" or "pending" in the same court, Congress has evinced its intent that preemption be considered at any time. Testing preemption at removal only would thus impermissibly limit the reach of SLUSA's preemption provision and also would run contrary to Congressional intent that SLUSA be interpreted broadly. See Merrill, 547 U.S. at 86 (observing that "Congress envisioned a broad construction" of SLUSA). Indeed, the Supreme Court has confirmed that a District Court may find SLUSA preemption in considering a defendant's motion to dismiss. See Merrill, 547 U.S. at 87-89. That is precisely what the District Court did here. Accordingly, the Fleming plaintiffs' arguments that SLUSA is only a removal statute and that preemption should only be tested upon removal lack merit.

Second, the Fleming plaintiffs argue that SLUSA's Rule of Construction,[14] requires the phrase "lawsuits filed in or pending in the same court," § 78bb(f)(5)(B)(ii), to be read as "lawsuits filed in or pending in the same [state] court." See id. Otherwise, according to the Fleming plaintiffs, the Rule of Construction would not refer to only "the discretion of the State court" but rather to "the discretion of the State or Federal Court" or simply to "the discretion of the courts." § 78bb(f)(5)(F). The problem with this interpretation, however, is that it flies in the face of the text of the "covered class action" provision, which refers to "courts" without limitation. See § 78bb(f)(B)(ii). And we will not adopt an interpretation of a statute that is contrary to its text. See Newby, 338 F.3d at 473 ("In this circuit, the plain language of the statute governs when clear on its face.") (citations omitted). Accordingly, the Fleming plaintiffs' statutory interpretation argument is without merit.

In a last-ditch effort to salvage their preempted claims, the Fleming plaintiffs argue that preempting their claims leads to an "absurd result" that contravenes SLUSA's purpose and places SLUSA on a collision course with the MDL. Again, the Fleming plaintiffs are incorrect. First, the Fleming plaintiffs contend that the objective of SLUSA is to preserve certain state private securities actions, and that preempting its claims will frustrate that objective. Simply put, the Fleming plaintiffs are way off. The stated purpose of SLUSA is "to prevent" not to preserve "certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives" of the PLSRA. Merrill, 547 U.S. at 86. Second, the Fleming plaintiffs contend that the MDL should not be used to create a "covered class action," that doing so allows federal courts to manufacture SLUSA preemption, and that the proper remedy for

---

[14] The SLUSA Rule of Construction provides: "Nothing in this paragraph shall be construed to affect the discretion of a State court in determining whether actions filed in such court should be joined, consolidated, or otherwise allowed to proceed as a single action." 15 U.S.C. 78bb(f)(5)(F).

defendants, if any, would be to undo the MDL consolidation. Fleming points to no law that stands for these propositions; and neither the MDL nor SLUSA is so limited. Moreover, the Fleming law firm ignores the fact that 172 of their 196 plaintiffs are before the Southern District of Texas by virtue of direct filing or direct removal, not the MDL. See note 4, infra. Thus, even setting aside the three cases transferred to the Southern District of Texas via the MDL, there are well over 50 plaintiffs in this case. See id. Finally, the Fleming plaintiffs brush aside their own contribution to SLUSA preemption: choosing to proceed as a single action. Consolidation alone is not basis for SLUSA preemption in this case))SLUSA preempts these consolidated cases because they have "proceed[ed] as a single action . . . ." See 15 U.S.C. § 78bb(f)(5)(B)(ii). Thus, it was the Fleming plaintiffs who created the foundation for SLUSA preemption by filing nearly identical complaints, jointly scheduling discovery, filing joint motions, providing nearly identical discovery responses, and using the same experts and expert reports. Consolidation did not force the Fleming plaintiffs to act in unison. They did so on their own, and they must now face the consequences. Accordingly, we hold that the District Court properly dismissed the Fleming cases with prejudice because SLUSA preempts all the Fleming plaintiffs' claims. See WorldCom, 308 F. Supp. 2d at 249.[15]

---

[15] The Fleming plaintiffs contend that our holding that SLUSA preempts their claims in this case conflicts with our prior decisions in Newby v. Enron Corp., 338 F.3d 467, 475 (5th Cir. 2003) and Newby v. Enron Corp., 302 F.3d 295, 302 (5th Cir. 2002), because those cases held that the Fleming firm could avoid SLUSA through artful litigating. We do not reject the rules of these cases. But the issue here is not whether the Fleming firm may avoid SLUSA; the question is whether they did in fact avoid SLUSA. We hold that they did not.

III

For the foregoing reasons, we AFFIRM the opinion of the District Court

AFFIRMED.