United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 19, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 03-31114
_____

EDWARD MILLER, Individually, and On
Behalf of All Others Similarly Situated,

Plaintiff - Appellant,

versus

NATIONWIDE LIFE INSURANCE COMPANY,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

Before JOLLY, WIENER, and PICKERING, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Edward Miller purchased annuities from Nationwide Life
Insurance Co. ("Nationwide"), which issued a prospectus relating to
the purchase and later issued an amended prospectus. After
Nationwide charged Miller transaction fees for certain trades he
made, Miller filed a class action against the insurance company,
alleging violations of the Securities Act of 1933 and breach of
contract under Louisiana law, arguing that in its initial offerings
Nationwide had represented there would be no fees charged. The
district court dismissed both claims: the Securities Act claim
because it was barred by the applicable statute of limitations, and
the contract claim because dismissal was mandated by the

restrictions placed on state law claims under the Securities Litigation Uniform Standards Act ("SLUSA"). We find no error and affirm the judgment of the district court.

I

In June and July 2001, Edward Miller purchased multiple Best of America Modified Single Premium Variable Annuities (the "Annuities") from Nationwide. Nationwide had issued its prospectus on May 1, 2001, in connection with the sale of these annuities. The prospectus informed purchasers that transfers of variable assets among various underlying mutual funds could be made without incurring any charges. However, Nationwide issued a supplemental prospectus on January 25, 2002, and another such supplement on May 1, 2002, stating both times that some short-term trades involving certain mutual funds would carry fees.

In May 2002, Miller made trades with some of the mutual funds that made up his annuities, and was billed for short-term trading fees in June 2002. On May 1, 2003, Miller filed suit against Nationwide on behalf of himself and a class of all others who had purchased the annuities between May 1, 2001 and April 30, 2002, alleging that Nationwide had violated the Securities Act of 1933. Miller contended that the May 2001 prospectus was "inaccurate and misleading, contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and failed to adequately disclose material facts." Miller further contended that, as a seller, offeror and/or

2

solicitor of the annuities, which included the Prospectus, Nationwide was strictly liable to Miller and other annuity holders for the Prospectus' misstatements and omissions. Miller also alleged a state law claim that Nationwide breached its contract with the Annuities purchasers by assessing fees on short-term trading.

Nationwide moved to dismiss Miller's complaint under FED. R. CIV. P. 12(b), and the district court granted the motion. The district court held that (1) the claims were barred by both the one-year statute of limitations and the three-year statute of repose contained in 15 U.S.C. § 77m; (2) although trading fees were imposed, Nationwide itself did not charge any fees on the short-term trading and thus a breach of contract claim could not be maintained against Nationwide; and (3) SLUSA expressly required dismissal of the state law claims because those claims alleged that Nationwide had made untrue statements or omissions of material fact.

II

We review a district court's decision to dismiss a case under Rule 12(b)(6) de novo. Rosenzweig v. Azurix Corp., 332 F.3d 854, 865 (5th Cir. 2003). We must accept the allegations in the complaint as true and view them in the light most favorable to the plaintiff when considering whether there is a claim upon which relief could be granted. Id.

A

We initially address Miller's claim under the Securities Act of 1933, and examine whether the claim is barred by the Act's statute of limitations. The Securities Act requires claims to be filed "within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. The Act's statute of repose further limits the discovery period to no more than "three years after the security was bona fide offered to the public . . . [or] three years after the sale." Id.

We first ask whether the district court erred in holding that Miller's Securities Act claim is barred by the one-year statute of limitations of 15 U.S.C. § 77m. Miller purchased annuities from Nationwide in June and July 2001, based on a prospectus dated May 1, 2001. The prospectus was supplemented on January 25, 2002 and on May 1, 2002. Miller filed this complaint on May 1, 2003. The original prospectus and both supplements were properly filed with the SEC. The district court concluded that SEC filings are generally sufficient to place investors on constructive notice of their contents. See Eckstein v. Balcor Film Investors, 58 F.3d 1162, 1169 (7th Cir. 1995). Though Miller disputed this conclusion in the district court, he does not do so here.

Thus, the only question becomes whether the contents of the supplemental prospectus of January 2002 should have enabled Miller to discover the alleged untrue statements or omissions made by

4

Nationwide.  If so, then Miller, at minimum, had constructive notice as of January 2002, and his claim -- filed May 1, 2003 -- is barred by the one-year statute of limitations.  However, if, as Miller claims, he did not receive actual or constructive notice until he received the supplemental prospectus of May 2002, his complaint was timely filed.

We conclude that the January 2002 supplemental prospectus placed Miller on constructive notice of Nationwide's alleged violation of the Securities Act.  The "untrue statement or omission" that Miller alleges is Nationwide's statement in the June 2001 Certificate Agreement that certificate owners "have the right to . . . transfer variable assets among the various funds without a charge."  By contrast, the January 2002 supplemental prospectus states that "THE 'STANDARD CHARGES AND DEDUCTIONS' PROVISION IS AMENDED TO INCLUDE THE FOLLOWING: . . .  Some underlying mutual funds may assess (or reserve the right to assess) a short-term trading fee in connection with transfers from an underlying mutual fund sub-account that occur within 60 days after the date of allocation . . . ."  We think this language was clearly sufficient to alert Miller to the reasonable possibility of an untrue statement or omission in the Certificate Agreement.

Miller advances two arguments to support his contention that the January 2002 supplemental prospectus did not provide actual or constructive notice.  First, he contends that he understood the original prospectus and the Certificate Agreement to mean (1) that

5

he would not be charged any administrative fees by Nationwide itself, and (2) that Nationwide, as opposed to the individual contract owner, would absorb any transfer fees imposed by the underlying mutual funds. Thus, Miller apparently contends that the statement in the January 2002 supplemental prospectus that "some underlying mutual funds may assess . . . a short-term trading fee" could not have alerted him to any untrue statement or omission, because it did not specify that contract owners, rather than Nationwide, would pay said fees.[1]

We find Miller's contention unpersuasive. The January 2002 supplemental prospectus also states that, if a short term trading fee is assessed, "the underlying mutual fund will charge the variable account," and the variable account "will then pass the short-term trading fee on to the specific contract owner . . . by deducting . . . from that contract owner's sub-account value." This

---

[1] Nationwide insists that Miller has waived this argument by virtue of his failure to pursue it on appeal. After a careful reading of Miller's brief, we disagree. As a general matter, arguments raised in the district court but omitted from the appellate brief are waived. See, e.g., Gomez v. Chandler, 163 F.3d 921 (5th Cir. 1999); Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993). Though Miller's brief comes close to abandoning the argument made below, it does assert that the "expense risk charge" constituted a "guarantee[]" by Nationwide that it would, in essence, absorb fee increases from underlying mutual funds. Miller then summarily states that the January 2002 supplemental prospectus did not provide notice that fees would be charged to contract owners, "though the contract owner's Certificate Agreement specifically provided that such fees would not be charged." As such, though the point is not well-argued in Miller's brief, it is not wholly abandoned, and thus not waived.

statement should have put to rest any uncertainty as to whether Nationwide intended to absorb transfer fees charged by the underlying mutual funds.

Miller goes on to argue that, even if the January 2002 supplemental prospectus did provide notice that transfer fees would be charged to contract owners, it did not indicate that they would be charged to existing contract owners, rather than only to prospective owners.  Upon review of his submissions to the district court, we note that Miller never advanced such an argument below. We have frequently said that we are a court of errors, and that a district court cannot have erred as to arguments not presented to it. See, e.g., Savers Fed. S & L Ass'n v. Reetz, 888 F.2d 1497, 1501 n.5 (5th Cir. 1989); Gabel v. Lynaugh, 835 F.2d 124, 125 (5th Cir. 1988); Citizens National Bank v. Taylor (In re Goff), 812 F.2d 931, 933 (5th Cir. 1987).  We therefore hold that Miller's argument on this point is waived by virtue of his failure to present it in the proceedings below.

We thus conclude that the district court did not err in finding that the January 2002 supplemental prospectus provided "constructive notice, if not actual notice" to Miller (and those similarly situated) of the alleged untrue statements or omissions.  As a result, we hold that Miller's claim under the Securities Act of 1933 was barred by the one-year statute of limitations of 15 U.S.C. § 77m.  Consequently, we need not address the other reason given by

the district court -- i.e., the Securities Act's three-year statute of repose -- for granting Nationwide's motion to dismiss.

B

We turn now to the district court's dismissal of Miller's breach of contract action under Louisiana law.  SLUSA states that "[n]o covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging . . . an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security . . . ."  15 U.S.C. § 77p(b)(1).  Miller does not dispute that this is a "covered class action", that the variable annuities qualify as "covered securities", or that his claim is based on Louisiana state law.  Thus, the only question before us is whether Miller's breach of contract claim alleged that Nationwide made untrue statements or omitted material facts in connection with the sale of annuities.

Miller's complaint clearly does include such allegations; it alleges "untrue statement[s]" and "omission[s]" and characterizes statements by Nationwide as "materially false and misleading."[2] All of these charges are incorporated by reference into Miller's breach

---

[2] Nationwide suggests that these allegations, made within the overall complaint, but outside the state law claim, are sufficient to require dismissal under SLUSA.  Because of the facts in this case -- that is, because Miller's state law claim itself contains allegations of misrepresentation and/or omissions -- we need not decide whether such a broad reading of the statute is justified.

8

of contract claim. Further, the breach of contract claim alleges that Nationwide met with the SEC "in an effort to impose a trading charge on transactions that it represented to Plaintiff and the Class would be free." Even Miller's brief -- in the section addressing the applicability of SLUSA -- alleges that Nationwide made an untrue statement when it promised that Miller would be allowed to "transfer variable assets among the various funds without a charge."

Miller, however, contends that 15 U.S.C. § 77p(b)(1) does not mandate dismissal of his state law claim because, regardless of the specific allegations it contains, he has styled it a claim for "breach of contract". We do not agree. The interpretation of SLUSA that Miller proposes would circumvent both the plain meaning of the statutory text and Congress' clearly expressed purpose in enacting it. SLUSA prevents a securities class action from proceeding on the basis of state law if the complaint "<u>alleg[es]</u> . . . an untrue statement or omission." 15 U.S.C. § 77p(b)(1). The issue of preemption thus hinges on the content of the allegations -- not on the label affixed to the cause of action. Moreover, we have previously recognized that SLUSA was designed to ensure that all causes of action involving allegations of misrepresentation or omission in connection with covered securities would be subject to the requirements of the Private Securities Litigation Reform Act of 1995. <u>See</u> <u>Newby v. Enron Corp.</u>, 338 F.3d 467, 472 (5th Cir. 2003) ("In enacting SLUSA Congress sought to curb all efforts to

9

circumvent the reforms put into place by PLSRA."); <u>see</u> <u>also</u> <u>In Re</u> <u>WorldCom, Inc. Secs. Litig.</u>, 308 F. Supp. 2d 236, 244 (S.D.N.Y. 2004) (noting that courts reject plaintiffs' effort to articulate pleadings that dodge SLUSA).

Here, it is plain that Miller has alleged both untrue statements and omissions of material fact in his state law breach of contract claim. We thus conclude that Miller's state law claim falls within the prohibition of 15 U.S.C. § 77p(b)(1). As such, the district court's dismissal of the state law contract claim in this class action securities case was proper.[3]

### III

We hold that the district court, applying the provisions of SLUSA, did not err in its dismissal of Miller's class action claims under the Securities Act and for breach of contract. Accordingly, the judgment of the district court dismissing the complaint is in all respects

AFFIRMED.

---

[3] We express no opinion as to whether Miller did or did not have a viable claim under the Securities Act or whether he had a valid claim for state law breach of contract. We hold only that the statute of limitations ran as to any Securities Act claim and that SLUSA required dismissal of the state contract claim because plaintiff included with his state contract claim allegations of an "untrue statement".

10