**C. Fred DANIELS, as Trustee ad Litem in substitution for Regions Bank dba Regions Morgan Keegan Trust for the Juanita H. Schaffer Irrevocable Trust, et al., Plaintiffs,**

v.

**MORGAN ASSET MANAGEMENT, INC., et al., Defendants.**

**Case No. 09–CV–02800.**

United States District Court,
W.D. Tennessee,
Western Division.

Sept. 30, 2010.

Albert C. Harvey, Justin E. Mitchell, Justin Edward Mitchell, Thomason Hendrix Harvey Johnson & Mitchell PLLC, Memphis, TN, R. Carlton Smyly, Cabaniss Johnston Gardner Dumas & O'Neal LLP, Birmingham, AL, for Plaintiffs.

David E. Swarts, David B. Tulchin, Margaret E. Bartlett, Sullivan & Cromwell, LLP, New York, NY, Matthew M. Curley, Michael L. Dagley, W. Brantley Phillips, Jr., Bass Berry & Sims PLC, Nashville, TN, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED TRUSTEE CLASS ACTION COMPLAINT AND DENYING PLAINTIFFS' MOTION FOR PERMISSION TO FILE SECOND AMENDED COMPLAINT

SAMUEL H. MAYS, JR., District Judge.

Before the Court are Motions to Dismiss filed by Defendant Regions Financial Corporation ("Regions Financial") and Defendants Morgan Asset Management, Inc. ("Morgan Management"), Morgan Keegan & Company, Inc. ("Morgan Keegan"), MK Holding, Inc., James C. Kelsoe, Jr., Allen B. Morgan, Jr., J. Kenneth Alderman, Brian B. Sullivan, Joseph C. Weller, J. Thompson Weller, Charles D. Maxwell, Michele F. Wood, David H. Tannehill, John Boston, Charlie A. Murray, Matt R. Smith, Doug Williams, Gary Partridge, Jenny Johns, and Guillermo R. Araoz (collectively, "Defendants") on February 22,

2010. (Regions Financial Corporation's Mot. to Dismiss, ECF No. 10; Defs.' Mot. to Dismiss, ECF No. 11.) (collectively, "Motions to Dismiss") Plaintiffs responded on March 26, 2010. (Pls.' Resp., ECF No. 13; *see also* ECF No. 14.) Defendants replied on April 12, 2010. (Reply Mem. of Law in Supp. of Defs.' Mot. to Dismiss, ECF No. 17; *see also* ECF No. 16.)

Also before the Court is Plaintiffs' Motion for Permission to File Second Amended Complaint filed on May 10, 2010. (ECF No. 18.) Defendants responded in opposition on May 24, 2010. (ECF No. 19.) Plaintiffs replied on June 7, 2010. (ECF No. 22.) Plaintiffs then filed a proposed Second Amended Complaint reflecting corrections on June 10, 2010. (ECF No. 24.) ("Second Am. Compl.")

On July 27, 2010, Defendants filed a document entitled "Defendants' Notice of Filing Supplemental Authority," which informed the Court of a recent opinion by the United States Court of Appeals for the Second Circuit. (ECF No. 27.) Plaintiffs responded on August 3, 2010. (ECF No. 28.)

Taking all facts alleged by Plaintiffs as true, amending the First Amended Complaint would be futile. Thus, the Court DENIES Plaintiffs' Motion for Permission to File Second Amended Complaint. Under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p(b), 78bb(f)(1)(A), Plaintiffs' claims in the First Amended Complaint are precluded. Therefore, the Court GRANTS Defendants' Motions to Dismiss the First Amended Complaint. The First Amended Complaint is DISMISSED WITH PREJUDICE.

## I. Background

Plaintiffs are suing on behalf of all trusts, custodial accounts, and their respective trustees, representatives, and fi-

duciaries, for which Regions Bank d/b/a Regions Morgan Keegan Trust ("Regions Trust") is or was a trustee or a directed trustee, custodian, or agent and which owned or held shares in any of the following investments between November 9, 2006, and November 9, 2009: Regions Morgan Keegan Select Short Term Bond Fund; Regions Morgan Keegan Select Intermediate Bond Fund; Regions Morgan Keegan Select High Income Fund; RMK Multi–Sector High Income Fund, Inc.; RMK Advantage Income Fund, Inc.; RMK Strategic Income Fund, Inc.; or RMK High Income Fund, Inc. (collectively, the "RMK Funds"). (First Am. Compl. ¶ 1, ECF No. 7.) Regions Trust successfully petitioned the Probate Court of Jefferson County, Alabama, to appoint a Trustee *ad Litem* to participate in litigation in substitution for Regions Trust on behalf of trusts and custodial accounts that owned or held shares in the RMK Funds. (*Id.* ¶ 3.) The Probate Court appointed C. Fred Daniels Trustee *ad Litem.* (*Id.* ¶ 4; Ex. A, ECF No. 7–1.)

On April 1, 2003, Regions Trust entered into a written Investment Advisory Services Agreement (the "2003 Contract") with Morgan Management for Morgan Management to provide investment services. (*Id.* ¶ 41.) On February 5, 2007, Regions Trust entered into a new Investment Advisory Services Agreement (the "2007 Contract") with Morgan Management for substantially the same services. (*See id.* ¶ 42.) The 2003 and 2007 Contracts required Morgan Management to perform those services "with ordinary skill and diligence." (*See id.* ¶ 43.)

In the 2003 and 2007 Contracts, Morgan Management agreed to recommend investments to be purchased for, or sold from, clients' accounts. (Ex. B ¶ 3, ECF No. 7–2; Ex. C ¶ 3, ECF No. 7–3.) Nevertheless, the services provided were more than mere advice. Regions Financial, Morgan

Management, Morgan Keegan, and MK Holding, Inc. (collectively, the "Regions Morgan Keegan Entity Defendants") allegedly caused the trusts and custodial accounts served by Regions Trust "to make, continue, and hold investments in the RMK Funds during the Class Period, rather than to discontinue and liquidate them." (First Am. Compl. ¶ 48.) The RMK Funds were disproportionately invested compared to peer funds in illiquid securities backed largely by mortgages. (*Id.* ¶ 46) During the relevant period, the RMK Funds suffered losses greater than peer funds' losses and did not rebound as well as peer funds after the adverse market events of 2007 and 2008. (*Id.* ¶ 49.) Those losses, in turn, caused Plaintiffs to suffer substantial financial losses. (*See id.* ¶¶ 56, 61, 68, 74.)

Plaintiffs assert that, by late 2006 and early 2007, information was available about the RMK Funds and their vulnerability that would have caused an investor of ordinary skill and diligence to discontinue investments in the RMK Funds. (*Id.* ¶¶ 46–47.) Nevertheless, the alleged nature of Regions Financial, which sits atop a corporate structure that includes the other Regions Morgan Keegan Entity Defendants, required Morgan Management to direct investments in the RMK Funds no matter how unsound they were. (*See id.* ¶¶ 5–6.) The Regions Morgan Keegan Entity Defendants allegedly operated Morgan Management "as a mere instrumentality, agent, or alter ego." (*Id.* ¶ 6.) In public filings and statements, they frequently described themselves as performing the services theoretically performed by Morgan Management. (*See id.* ¶¶ 7–17.)

The proposed Second Amended Complaint seeks to add a number of details about why the alleged nature of Regions Financial required Morgan Management to direct that RMK Funds be purchased

and retained. According to the proposed Second Amended Complaint, the Regions Morgan Keegan Entity Defendants' leading executives during the relevant period reported to executives at theoretically independent corporations. Carter Anthony, the President of Morgan Management from 2001 through 2006, reported to J. Kenneth Alderman, the President and CEO of Regions Trust and a senior officer of Regions Financial. (Second Am. Compl. ¶ 21.) Alderman reported to Doug Edwards, the President and CEO of Morgan Keegan. (Id.) Edwards reported to Allen Morgan, the Chairman of Morgan Keegan's Board of Directors and Vice Chairman of Regions Financial's Board of Directors. (Id.) Some executives drew paychecks from corporations different from the corporations that theoretically employed them. For instance, Michele Wood, Morgan Management's Chief Compliance Officer, received a paycheck from Morgan Keegan and never received a paycheck from Morgan Management. (Id. ¶¶ 27, 40.)

The intertwined corporate structure allegedly made it impossible for Morgan Management to exercise independent judgment in determining whether RMK Funds should be purchased and retained. Because Anthony reported to executives at the other Regions Morgan Keegan Entity Defendants, who worked for entities with a financial interest in the purchase and retention of the RMK Funds, Anthony could be terminated if he did not purchase RMK Funds for the trusts and custodial accounts. (See id. ¶¶ 21, 25–26.)

Although Morgan Management was to manage the RMK Funds, the other Regions Morgan Keegan Entity Defendants allegedly controlled how the RMK Funds were invested. (See id. ¶¶ 22–23.) James C. Kelsoe, the Senior Portfolio Manager for the RMK Funds, was an employee of both Morgan Management and Morgan Keegan. (Id. ¶ 57.) According to Anthony, Kelsoe "was sort of like an island" in Morgan Management. (Id. ¶ 24.) Kelsoe spoke frequently with Alderman and Edwards. (See id. ¶¶ 23–24.) Edwards and Morgan allegedly ordered Anthony to "leave Kelsoe alone" and give Kelsoe absolute discretion in investing the RMK Funds because "he's doing what we want him to do." (Id. ¶¶ 22–23.) Kelsoe thus made investment choices for the RMK Funds without internal supervision within Morgan Management. (See id. ¶¶ 21–25.)

Plaintiffs allege four claims. First, breach of the 2003 Contract because the Regions Morgan Keegan Entity Defendants allegedly caused "Regions Trust as trustee of the Trusts and Custodial Accounts to make, continue, or hold investments in the RMK Funds, as opposed to alternative investments, during the periods when collapse of the RMK Funds' share prices, net asset values, and redemption prices was imminent or had begun." (First Am. Compl. ¶ 55.) Second, breach of the 2007 Contract for the same reasons. (Id. ¶ 60.) Third, negligent breach by the Regions Morgan Keegan Entity Defendants of the duty to perform, supervise, or direct the investment services Morgan Management agreed to perform with reasonable diligence, skill, and care. (Id. ¶¶ 66–67.) Fourth, negligent breach of the same duty by the remaining Defendants. (Id. ¶¶ 72–74.)

Plaintiffs allege that the class of trusts, custodial accounts, and their respective trustees, representatives, and fiduciaries is so numerous that joinder of all class members would be impracticable. (Id. ¶ 78(a).) Plaintiffs specifically assert that their claims are not based or dependent on "[a]n untrue statement or omission of a material fact in connection with the purchase, sale, or retention of a security (including, but not limited to, shares of any of the RMK

Funds)" or "[t]he use or employment by any of the defendants of any manipulative or deceptive device or contrivance in connection with the purchase, sale, or retention of a security (including, but not limited to, shares of any of the RMK Funds)." (*Id.* ¶ 83.)

Plaintiffs originally filed suit in the Circuit Court of Shelby County, Tennessee. (Compl., ECF No. 1–1.) Defendants removed the action to the United States District Court for the Western District of Tennessee. (Notice of Removal, ECF No. 1; Civil Cover Sheet, ECF No. 1–4.)

## II. Jurisdiction and Standard of Review

This Court has jurisdiction under 15 U.S.C. § 77p(c), which provides that "[a]ny covered class action brought in any State court involving a covered security ... shall be removable to the Federal district court for the district in which the action is pending."

"Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be freely given when justice so requires." *Riverview Health Inst. LLC v. Med. Mut. of Ohio,* 601 F.3d 505, 520 (6th Cir.2010). However, when a proposed amendment would be futile because the cause of action cannot withstand a Rule 12(b)(6) motion to dismiss, courts may deny a motion to amend. *See id.*

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.,* 272 F.3d 356, 361 (6th Cir.2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (*per curiam* ). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Id.* (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.) Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face' " to survive a motion to dismiss. *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citation omitted). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Id.* at 1950.

## III. Analysis

SLUSA emerged as remedial legislation to prevent circumvention of the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and the resulting frustration of its goals. *See Segal v. Fifth Third Bank, N.A.,* 581 F.3d 305, 308–09 (6th Cir.2009). Congress passed the PSLRA to address "perceived abuses of the class-action vehicle in litigation involving nationally traded securities" by imposing special

burdens on plaintiffs. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,* 547 U.S. 71, 81, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006); *Segal,* 581 F.3d at 308 (citations omitted). Some plaintiffs sought to evade those burdens by bringing class actions involving nationally traded securities in state courts under state law, a rare phenomenon before the PSLRA. *Dabit,* 547 U.S. at 82, 126 S.Ct. 1503. Dissatisfied with this practice, Congress passed SLUSA to "den[y] plaintiffs the right to use the class-action device to vindicate certain claims." *Id.* at 87, 126 S.Ct. 1503; *see Segal,* 581 F.3d at 309.

■ Under SLUSA, private parties may not maintain a "covered class action" based on state law in state or federal court that alleges "an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. §§ 77p(b), 78bb(f)(1)(A); *Dabit,* 547 U.S. at 74, 126 S.Ct. 1503. For SLUSA to bar a lawsuit, four elements must be present: (1) a "covered" class action, (2) state law claims, (3) a "covered security," and (4) "an untrue statement or omission of a material fact in connection with" buying or selling a covered security or a "manipulative or deceptive device or contrivance in connection with" buying or selling a covered security. *See Segal,* 581 F.3d at 309 (citations omitted).

■ Consistent with Congress's intent, courts construe SLUSA's "expansive language broadly" to prevent frustration of the PSLRA's objectives. *Id.* (citing *Dabit,* 547 U.S. at 85–86, 126 S.Ct. 1503); *see also Dabit,* 547 U.S. at 72, 126 S.Ct. 1503. In deciding the present motions, the Court must decide whether the First Amended Complaint and proposed Second Amended Complaint satisfy each element of SLUSA, broadly construed.

### A. Covered Class Action

A lawsuit in which "one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members" is a "covered class action." 15 U.S.C. §§ 77p(f)(2)(A)(i)(II), 78bb(f)(5)(B)(i)(II).

Here, Plaintiffs purport to sue "on behalf of a Class of all trusts . . . and custodial accounts." (First Am. Compl. ¶¶ 1, 76.) An Alabama court appointed Daniels as Trustee *ad Litem* and authorized him to take "any and all appropriate actions on behalf of the Trust Accounts and the Custodial Accounts relating to the Funds." (Ex. A ¶ 3.) Daniels is thus suing on a representative basis.

Plaintiffs allege that "[t]here are questions of law and fact common to the claims of the Representative Plaintiff Trusts and other members of the Class that predominate over any questions solely affecting individual members of the Class." (First Am. Compl. ¶ 77.) Plaintiffs also allege that "[t]he Class members are so numerous that joinder of all such Class members is impracticable." (*Id.* ¶ 78(a).) Therefore, the "covered class action" requirement is satisfied.

### B. State Law Claims

For SLUSA to apply, the covered class action must be based on state law. *Dabit,* 547 U.S. at 74, 126 S.Ct. 1503 (citing 15 U.S.C. § 78bb(f)(1)(A)); *Segal,* 581 F.3d at 309. Here, Plaintiffs have brought only state law claims for breach of contract and negligence. (*See* First Am. Compl. ¶¶ 56, 61, 68, 74.) Therefore, the state law claims requirement is satisfied.

## C. Covered Security

■ Under SLUSA, a "covered security" is "a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 18(b) of the Securities Act of 1933 [15 U.S.C.A. § 77r(b)], at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred ...." 15 U.S.C. § 78bb(f)(5)(E). "Under § 18(b) of the Securities Act of 1933, the phrase 'covered security' includes 'a security issued by an investment company that is registered, or that has filed a registration statement, under the Investment Company Act of 1940.'" *Instituto De Prevision Militar v. Merrill Lynch,* 546 F.3d 1340, 1351 n. 2 (11th Cir.2008) (citing 15 U.S.C. § 77r(b)(2)).

Here, Plaintiffs have stated that the trusts and custodial accounts purchased and held the RMK Funds. (*See* First. Am. Compl. ¶ 1.) Plaintiffs have cited many public filings by the Regions Morgan Keegan Entity Defendants, including Form 10–K Annual Reports. (*See id.* ¶¶ 11–18.) According to Plaintiffs, Regions Financial's Form 10–K Annual Reports state that "Morgan Keegan is registered as an *investment adviser*" and that the RMK Funds are proprietary mutual funds managed by Morgan Keegan (*Id.* ¶ 12.) Defendants have brought to the Court's attention that "[t]he registration statement of each of the Funds provides that the Funds are offered by investment company's [sic] registered under the ICA." (Mem. of Law in Supp. of Defs.' Mot. to Dismiss 7 n. 2, ECF No. 11–1.) Plaintiffs do not contest the accuracy of these documents. (*See* Pls.' Resp.) Because Plaintiffs have pled facts demonstrating that each of the RMK Funds is issued by a registered investment company and have incorporated by reference the RMK Funds' filings, which "are matters of public record and not subject to reasonable dispute" and

which are appropriate for judicial notice, the Court finds that each of the RMK Funds is issued by a registered investment company. *See* 15 U.S.C. § 80a–3(a)(1) (stating that, to be an "investment company," one must be at least an "issuer"); 15 U.S.C. § 80a–2(a)(22) (defining "issuer" as "every person who issues or proposes to issue any security, or has outstanding any security which it has issued"); *In re Enron Corp. Sec., Derivative, & "ERISA" Litig.,* 540 F.Supp.2d 759, 786 (S.D.Tex. 2007). Therefore, the "covered security" requirement is satisfied.

## D. Untrue Statement or Omission of a Material Fact in Connection with Buying or Selling a Covered Security

■ The crux of the dispute between Plaintiffs and Defendants in their respective motions and memoranda is whether Plaintiffs allege an "untrue statement or omission of a material fact in connection with the purchase or sale of a covered security." The First Amended Complaint and the proposed Second Amended Complaint expressly disclaim any relief based on "[a]n untrue statement or omission of a material fact in connection with the purchase, sale, or retention of a security (including, but not limited to, shares of any of the RMK Funds)." (First Am. Compl. ¶ 83(a); Second Am. Compl. ¶ 96(a).) Nevertheless, courts must disregard disclaimers and labels attached to claims. *Segal,* 581 F.3d at 310–11. Instead of relying on self-serving statements, courts must examine the substance of a complaint's allegations to determine whether they include the "covered concepts" of misrepresentations, material omissions, or manipulation. *See id.* at 309–11 (citations omitted); *see also Romano v. Kazacos,* 609 F.3d 512, 522–23 (2d Cir.2010); *Kutten v. Bank of Am., N.A.,* 530 F.3d 669, 670–71 (8th Cir.2008); *Stoody–Broser v. Bank of*

*Am.,* No. 08–02705, 2009 WL 2707393, at *2–3 (N.D.Cal. Aug. 25, 2009).

■ Incorporating "covered concepts" by reference into state-law counts is grounds for dismissal under SLUSA. *See Miller v. Nationwide Life Ins. Co.,* 391 F.3d 698, 702 (5th Cir.2004) (dismissing under SLUSA a state-law breach of contract claim that incorporated by reference allegations of "untrue statement[s]" and "omission[s]") (alterations in original); *Prof'l Mgmt. Assocs., Inc. Emps.' Profit Sharing Plan v. KPMG LLP,* 335 F.3d 800, 803 (8th Cir.2003) ("[Plaintiff] also contends we should remand its negligence claim because there is no allegation of a misrepresentation or omission in connection with it. [Plaintiff]'s allegations regarding KPMG's misrepresentations and omissions are incorporated by reference in the negligence count, however. Because [Plaintiff]'s negligence claim is essentially a securities fraud claim, SLUSA governs.") (citations omitted); *Backus v. Conn. Cmty. Bank, N.A.,* No. 3:09–CV–1256, 2009 WL 5184360, at *11 (D.Conn. Dec. 23, 2009) (dismissing a state-law breach of contract claim that incorporated by reference allegations of untrue and misleading statements where the complaint's unstated gravamen was "a fraudulent scheme in connection with the purchase and sale of securities") (citations omitted). Therefore, SLUSA requires dismissal of state-law claims that rely on misrepresentations, material omissions, or manipulations "as an integral part of the conduct giving rise to the claims." *Levinson v. PSCC Servs., Inc.,* No. 3:09–CV–00269, 2009 WL 5184363, at *13 (D.Conn. Dec. 23, 2009).

■ Here, the substance of Plaintiffs' First Amended Complaint and proposed Second Amended Complaint is that Defendants misrepresented how investments would be determined and omitted a material fact: an undisclosed conflict of interest

that required Defendants to invest assets of the trusts and custodial accounts in the RMK Funds. Each of Plaintiffs' four claims turns on the alleged misrepresentation and omission. They are an integral part of the conduct giving rise to the claims. For that reason, SLUSA bars Plaintiffs' First Amended Complaint and makes amendment of it futile.

Plaintiffs claim that the Regions Morgan Keegan Entity Defendants breached the 2003 Contract and the 2007 Contract. According to Plaintiffs, to comply with the 2003 and the 2007 Contracts, the Regions Morgan Keegan Entity Defendants could not "caus[e] Regions Trust ... to make, continue, or hold investments in the RMK Funds, as opposed to alternative investments, during periods when collapse of the RMK Funds' share prices, net asset values, and redemption prices was imminent or had begun." (First Am. Compl. ¶¶ 54, 59.) The argument is that, because Defendants allegedly did so, they breached both contracts. (*Id.* ¶¶ 56, 61.)

The conduct incorporated by reference into the breach of contract claims goes beyond including two "covered concepts," misrepresentations and omissions, which alone would be sufficient to dismiss these claims. *See Segal,* 581 F.3d at 309–11. As the facts alleged in the First Amended Complaint and the new facts alleged in the proposed Second Amended Complaint show, the misrepresentations and omissions are integral to the breach of contract claims.

Underlying Plaintiffs' breach of contract claims is an alleged corporate scheme that, unknown to Regions Trust account holders, effectively required that money in trust at Regions Trust be used to buy and hold investments in the RMK Funds to enrich Regions Financial. A careful examination of the First Amended Complaint and the proposed Second Amended Com-

plaint reveals that this undisclosed conflict of interest is the theory on which Plaintiffs base their breach of contract claims.

According to Plaintiffs, Regions Financial "sits atop and controls a tight concern of overlapping and interwoven enterprises that operates as a single, unified concern" that includes the Regions Morgan Keegan Entity Defendants. (First Am. Compl. ¶ 5.) Plaintiffs represent trusts and custodial accounts for which Regions Trust served as trustee or a directed trustee, custodian, or agent. (*Id.* ¶ 1.) Regions Trust allegedly delegated to Morgan Management, an alter ego of the Regions Morgan Keegan Entity Defendants, responsibility for investing trusts and custodial accounts held by Regions Trust. (*See id.* ¶¶ 5–7, 48–51.) The proposed Second Amended Complaint expands Plaintiffs' theory, alleging that Morgan Management and the other Regions Morgan Keegan Entity Defendants breached the contracts "by actually *determining* the investments to be made and held by or in the Trusts and Custodial Accounts," choosing to buy and maintain investments in the RMK Funds. (Second Am. Compl. ¶ 59.)

Plaintiffs contend that "[a]t all material times, defendant Morgan Management was not operated as an independent and distinct corporate entity." (First Am. Compl. ¶ 5.) The proposed Second Amended Complaint adds the allegation that "Regions Financial acquired Morgan Keegan and Morgan Management in 2001 for the purpose of using them to generate fee-based income from Regions Financial's customers." (Second Am. Compl. ¶ 5.) Plaintiffs allege many facts in the proposed Second Amended Complaint to show Morgan Management's lack of independence. For instance, Plaintiffs assert in the proposed Second Amended Complaint that Michele Wood, the Chief Compliance Officer for Morgan Management, was actually an employee of Morgan Keegan and never received a paycheck from Morgan Management. (*Id.* ¶¶ 27, 28, 40.) Plaintiffs also allege that James C. Kelsoe served as Senior Portfolio Manager for Morgan Management and the RMK Funds, but was "actually employed by Morgan Keegan." (*Id.* ¶ 29.)

The most relevant facts revealing Plaintiffs' artfully unstated conflict of interest theory concern Carter Anthony, the President of Morgan Management from 2001 through 2006. (*Id.* ¶ 21.) Anthony reported to Kenneth Alderman, the President and CEO of Regions Trust and a senior officer of Regions Financial, who reported to Doug Edwards, the President and CEO of Morgan Keegan. (*Id.*) Edwards reported to Allen Morgan, the Chairman of Morgan Keegan's Board of Directors and Vice Chairman of Regions Financial's Board of Directors. (*Id.*) Pressure from these superiors allegedly required Anthony to "leave Kelsoe alone," "give Kelsoe whatever he wanted or needed," and allow Kelsoe to purchase and hold the RMK Funds no matter what. (*See id.* ¶¶ 22–25.) Because of Regions Financial's financial interest in the RMK Funds and control of Morgan Management, "if Mr. Anthony attempted to keep RMK Funds out of the Trusts and Custodial Accounts, he would be fired." (*Id.* ¶ 25.) In short, executives at Morgan Management had essentially no choice but to buy and hold investments in the RMK Funds. (*See id.* ¶ 26.)

Artfully unstated, but readily discernable as logical corollaries of Plaintiffs' undisclosed conflict of interest theory in both the First Amended Complaint and the proposed Second Amended Complaint, are two facts demonstrating that SLUSA precludes the state-law breach of contract claims. The first is that the Regions Morgan Keegan Entity Defendants misrepresented to the Plaintiffs and Regions Trust how appropriate investments would be de-

termined for money held in trusts and custodial accounts. The second is that the Regions Morgan Keegan Entity Defendants omitted to tell the Plaintiffs and Regions Trust a material fact: that trust assets would be used to purchase and hold investments in the RMK Funds no matter what. This is a material fact because there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by a reasonable investor as having significantly altered the 'total mix' of information made available." *Starr ex rel. Estate of Sampson v. Georgeson Shareholder, Inc.*, 412 F.3d 103, 110 (2d Cir.2005) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988)).

Plaintiffs contend that "[t]his action is not based on what the defendants said or did not say, represented or suppressed, disclosed or did not disclose. Rather, this action is based on what Morgan Management and the other defendants *did.*" (Pls.' Resp. 8.) However, the undisclosed conflict of interest is precisely what Plaintiffs argue caused Defendants to do what they "did." Proving Defendants' alleged breach of contract and negligence would necessarily require proving Defendants' misrepresentations and omissions. Because the ultimate issue "is whether the complaint covers the prohibited theories, no matter what words are used (or disclaimed) in explaining them," Plaintiffs cannot avoid SLUSA by merely pleading the elements of state-law claims and incorporating by reference tacit allegations of misrepresentations and omissions. *See Segal,* 581 F.3d at 311. If they could, SLUSA-preclusion would turn on parties' pleading abilities, ignoring the substance of complaints. That is not what Congress intended. *See id.* at 310–11. Plaintiffs must take responsibility for the substance of allegations included in the First Amended Complaint and the proposed Second Amended Complaint. *See id.* at 312.

Therefore, the First Amended Complaint and the proposed Second Amended Complaint include the "covered concepts" of misrepresentations and material omissions. *See id.* at 309–11.

In analogous cases, other courts have concluded that complaints alleging undisclosed conflicts of interest include misrepresentations and omissions covered by SLUSA. One court concluded that, where a complaint alleged that customers believed they were paying for and receiving objective investment advice but actually received recommendations based on their broker's desired investment deals, the claim was not merely the state-law breach of contract alleged. *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F.Supp.2d 684, 693 (S.D.N.Y.2006). It was "a securities fraud wolf dressed up in a breach of contract sheep's clothing" and "a quintessential example of a fraudulent omission of a material fact under the federal securities laws." *Id.* Here, the gravamen of Plaintiffs' complaint is the same: Defendants' lack of objectivity in investing others' money. (*See* First Am. Compl. ¶¶ 5–7, 23–26, 30, 41–52; Second Am. Compl. ¶¶ 22–26.) Therefore, the same finding of SLUSA preclusion is appropriate. *See Felton,* 429 F.Supp.2d at 693; *see also Beckett v. Mellon Investor Servs. LLC,* 329 Fed.Appx. 721, 723 (9th Cir.2009) (finding SLUSA preclusion where plaintiff's "claims to some extent rely on the allegation that Mellon did not disclose its fees" in connection with the sale of securities); *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 296–97 (3d Cir.2005) (finding SLUSA preclusion where the plaintiff alleged that the defendant provided "biased investment research and analysis" to "curry favor with investment banking clients and reap hundreds of millions of dollars in investment banking fees").

The United States Court of Appeals for the Eighth Circuit has held that SLUSA precluded "state-law claims that a trustee breached its fiduciary duty by failing to disclose conflicts of interest in its selection of nationally-traded investment securities." *Siepel v. Bank of Am., N.A.*, 526 F.3d 1122, 1124 (8th Cir.2008). Here, Plaintiffs make the same allegation. (*See* First Am. Compl. ¶¶ 5–7, 23–26, 30, 41–52; Second Am. Compl. ¶¶ 22–26.) A similar finding of SLUSA preclusion is appropriate. *See Siepel*, 526 F.3d at 1124; *see also Stoody–Broser*, 2009 WL 2707393, at *1–5 (finding SLUSA preclusion where the plaintiffs alleged that that "the Defendants' administration of the trust has been unlawfully compromised by a conflict of interest attributable to the fees that Defendants receive as a result of investing trust assets in share[s] of its affiliated mutual funds").

A district court has found SLUSA preclusion where, unknown to the plaintiffs, brokers allegedly awarded contracts to execute portfolio transactions based on bribes rather than the plaintiffs' best interests. *Kurz v. Fid. Mgmt. & Research Co.*, No. 07–CV–709–JPG, 2008 WL 2397582, at *4–5 (S.D.Ill. June 10, 2008), *aff'd*, 556 F.3d 639 (7th Cir.2009). The court reasoned that "[t]his is not a simple breach of contract claim, because neither party to the contract ever had any intention of fulfilling that term of the contracts" and found that the "allegations amount to an allegation that the contracts contained a misrepresentation of a material fact." *Id.* at *4. Here, Plaintiffs make a similar allegation: that conflicts of interest prevented trust assets from being invested according to the trusts' best interests. (*See* First Am. Compl. ¶¶ 5–7, 23–26, 30, 41–52; Second Am. Compl. ¶¶ 22–26.) The conclusion that SLUSA precludes Plaintiffs' breach of contract claims is thus appropriate. *See Kurz*, 2008 WL 2397582, at *4–5; *see also Dommert v. Raymond James Fin. Servs., Inc.*, No. CIV A. 1:06–CV102, 2007 WL 1018234, at *10–12 (E.D.Tex.2007) (finding that SLUSA precluded plaintiffs' breach of contract, breach of fiduciary duty, and unjust enrichment claims based on the defendants' failure to disclose information about charged fees and conflicts of interest in investing and reinvesting). Here, the substance of Plaintiffs' breach of contract claims includes allegations of misrepresentations and material omissions. *See Segal*, 581 F.3d at 310–11.

Plaintiffs' negligence claims against the Regions Morgan Keegan Entity Defendants and the remaining Defendants suffer the same shortcoming. According to Plaintiffs, Defendants negligently breached their "duty to exercise reasonable diligence, skill, and care in performing, supervising, or directing the Services" by causing Regions Trust "to make, continue, or hold investments in the RMK Funds, as opposed to alternative investments, during periods when collapse of the RMK Funds' share prices, net asset values, and redemption prices was imminent or had begun." (First Am. Compl. ¶¶ 66–67, 72–73.)

Although not expressly stated in the Complaint, the conduct discussed above that underlies Plaintiffs' breach of contract claims also underlies Plaintiffs' negligence claims: an alleged corporate scheme that, unknown to Regions Trust account holders, effectively required that money placed in the trust of Regions Trust be used to buy and hold investments in the RMK Funds to enrich Regions Financial. (*See id.* ¶¶ 5–7, 23–26, 30, 41–52; Second Am. Compl. ¶¶ 22–26.) Plaintiffs allege that, pursuant to this scheme, Defendants bought and held investments in the RMK Funds using trust assets. The two readily discernable facts discussed above also underlie this alleged conduct: misrepresentations to Plaintiffs and Regions Trust about how appropriate investments would be determined, and omission of the fact that

trust assets would be used to purchase and hold investments in the RMK Funds no matter what. (*See* First Am. Compl. ¶¶ 5–7, 23–26, 30, 41–49; Second Am. Compl. ¶¶ 22–26.) Therefore, the substance of Plaintiffs' negligence claims includes allegations of misrepresentations and material omissions. *See Segal,* 581 F.3d at 310–11; *see also Romano,* 609 F.3d at 524 (holding that SLUSA applied where plaintiffs alleged state-law causes of action for negligence, inter alia, based on defendants' alleged misrepresentations about plaintiffs' ability to retire early causing plaintiffs to retire early, receive lump sum benefits, and invest their retirement savings with defendants, where the savings were used to purchase covered securities).

Because the substance of Plaintiffs' claims is founded in misrepresentations and material omissions, the question becomes whether those misrepresentations and material omissions occurred "in connection with" buying or selling a covered security. *See Segal,* 581 F.3d at 309 (citations omitted). If so, SLUSA precludes Plaintiffs' claims. *See id.*

■ Consistent with Congress's intent, courts broadly construe the "in connection with" requirement, making it only a "modest" one. *Id.* at 309–10. Misrepresentations and material omissions occur "in connection with the purchase or sale" of a covered security when they "coincide" with a securities transaction, whether by the plaintiff or someone else. *See Dabit,* 547 U.S. at 85, 126 S.Ct. 1503; *see also Stoody–Broser,* 2009 WL 2707393, at *5 ("The 'in connection with' requirement of SLUSA is satisfied whenever the alleged misconduct coincides with a securities transaction, whether undertaken by the plaintiff or someone else.").

Here, Plaintiffs' First Amended Complaint and proposed Second Amended Complaint in substance allege that misrepresentations and material omissions coin-

cided with the purchase and sale of the RMK Funds, which are covered securities. *Segal* is directly on point, barring Plaintiffs' claims. In *Segal,* the United States Court of Appeals for the Sixth Circuit found the "in connection with" requirement satisfied where a trust beneficiary sued on behalf of trust, estate, and fiduciary accounts for which a bank served as a corporate fiduciary. *See Segal,* 581 F.3d at 308–10. The trust beneficiary alleged that the bank breached its fiduciary and contractual duties by investing fiduciary assets in the bank's own proprietary, high-fee mutual funds, not providing "individualized management," and by investing money held in inappropriate low-yield investments. *See id.* at 308. Under these facts, the Sixth Circuit found the "in connection with" requirement easily satisfied:

> All of [the trust beneficiary]'s counts—breach of fiduciary duty, unjust enrichment, breach of contract—revolve around [the bank]'s decision to buy mutual funds shares. [The trust beneficiary]'s allegations do not merely "coincide" with securities transactions; they depend on them. Under these circumstances, the district court properly concluded that SLUSA requires the dismissal of this complaint.

*Id.* at 310 (internal citation omitted).

Plaintiffs are suing on behalf of trust and custodial account holders for which Regions Trust served as fiduciary and made inappropriate investments in the RMK Funds. (*See* First Am. Compl. ¶¶ 1, 55, 60, 67, 73.) The alleged misrepresentations and material omissions coincide with the transactions in the RMK Funds, the covered securities, at two levels. The first is the misrepresentations about how appropriate investments would be determined and the omission of the domination and control of Regions Trust by the Regions Morgan Keegan Entity Defendants,

which induced Plaintiffs to entrust and keep their money in Regions Trust accounts. The second is the misrepresentations and omissions in Morgan Management's contract with Regions Trust to provide investment advice and services, at issue because Plaintiff Daniels is suing as Trustee *ad Litem* for Regions Trust. (*See id.* ¶¶ 3, 59; Ex. A; Ex. B; Ex. C.). Because all of Plaintiffs' claims revolve around the decision to buy and hold investments in the RMK Funds, the claims "do not merely 'coincide' with securities transactions; they depend on them." *Segal*, 581 F.3d at 310. Therefore, both the First Amended Complaint and the proposed Second Amended Complaint satisfy the modest "in connection with" requirement. *See id.* at 308–10; *see also Rowinski*, 398 F.3d at 302–04.

For the above reasons, the substance of Plaintiffs' claims involves misrepresentations and material omissions in connection with the purchase or sale of covered securities. Unless one of SLUSA's statutory exemptions, known as the "Delaware Carve–Outs," applies, SLUSA bars Plaintiffs' claims. *See Atkinson v. Morgan Asset Mgmt., Inc.* 664 F.Supp.2d 898, 903–04 (W.D.Tenn.2009) (citations omitted). Here, Plaintiffs have not argued and no evidence on the record before the Court suggests that a statutory exemption applies. The gravamen of the First Amended Complaint and proposed Second Amended Complaint is that undisclosed conflicts of interest caused the Defendants "to make, continue, and hold investments in the RMK Funds during the Class Period, rather than to discontinue and liquidate them." (*See* First Am. Compl. ¶ 48; Second Am. Compl. ¶ 59.) Because Plaintiffs' primary contention is that, but-for the undisclosed conflicts of interest, investments in the RMK Funds would have been discontinued during the relevant period, the statutory exemptions do not apply. *See Atkinson*, 664 F.Supp.2d at 904–

05; *see also Crimi v. Barnholt*, No. C 08–02249, 2008 WL 4287566, at *4 (N.D.Cal. Sept. 17, 2008) ("[A] claim that Defendants omitted material information which caused Plaintiffs to hold, sell, or purchase stock is the quintessential securities fraud action preempted by SLUSA."). Therefore, SLUSA bars Plaintiffs' claims. *See Segal*, 581 F.3d at 312; *Atkinson*, 664 F.Supp.2d at 903–04.

## IV. Conclusion

Because the proposed Second Amended Complaint's claims incorporate allegations of misrepresentations and material omissions in connection with the purchase or sale of covered securities by reference, Plaintiffs' claims as amended could not survive a motion to dismiss. (*See* Second Am. Compl. ¶¶ 64, 69, 74, 81.) Therefore, amendment would be futile. *Riverview Health Inst.*, 601 F.3d at 520. Plaintiffs' Motion for Permission to File Second Amended Complaint is DENIED. The First Amended Complaint suffers the same shortcoming. (*See* First Am. Compl. ¶¶ 53, 58, 63, 69.) Therefore, Defendants' Motions to Dismiss the First Amended Complaint are GRANTED.

Plaintiffs have filed three complaints that fail to meet SLUSA's requirements: the original Complaint, the First Amended Complaint, and the proposed Second Amended Complaint. Because "covered concepts" under SLUSA pervade Plaintiffs' allegations, further amendment would be futile. Therefore, the Court DISMISSES Plaintiffs' suit WITH PREJUDICE. *See G.F. Thomas Invs., L.P. v. Cleco Corp.*, 317 F.Supp.2d 673, 686 (W.D.La. 2004) (dismissing case with prejudice where any effort at amendment would not save the action from SLUSA preclusion); *see also Newby v. Enron Corp. (In re Enron Corp. Sec., Derivative, & ERISA Litig.)*, 535 F.3d 325, 342 (5th Cir.2008)

(affirming a district court's SLUSA dismissal of complaint with prejudice); *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095 n. 6 (11th Cir.2002) (stating that a district court properly dismissed SLUSA–precluded claims with prejudice where the plaintiff could not recover on any state law claim alleging wrongful inducement to buy stocks).